**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**JUVENILE MALE, Defendant–
Appellant.**

**No. 01–10693.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed July 23, 2003.

Robert J. McWhirter, Assistant Federal Public Defender, Phoenix, AZ, for the defendant-appellant.

Linda C. Boone, Assistant United States Attorney, Phoenix, AZ, for the plaintiff-appellee.

Before BRUNETTI and TASHIMA, Circuit Judges, and EZRA, District Judge.*

## OPINION

TASHIMA, Circuit Judge.

Appellant J.R. appeals the district court's order granting the government's motion to transfer him to adult status. He contends that the district court lacked jurisdiction because it never received his juvenile records before ordering the transfer, as required by 18 U.S.C. § 5032. He also challenges the court's consideration of arrests that did not result in convictions as part of his prior delinquency record. We have jurisdiction pursuant to 28 U.S.C. § 1291. *United States v. Gerald N.*, 900 F.2d 189, 191 (9th Cir.1990). We reverse and remand.

## BACKGROUND

On June 17, 2001, J.R. was arrested for assaulting tribal police officers with a deadly weapon during a traffic stop. He was one of four passengers in a car that

---

* The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

was pulled over by tribal officers on the Salt River Pima–Maricopa Indian Reservation. When the officers were approaching the car for a second time after checking the passengers' identification, one officer noticed that J.R.'s hand was hidden from view and ordered him to "show his hands." J.R. pointed a gun out the window and fired on the officers. There appears to be some dispute over the number of shots fired.

The police returned fire and ordered the passengers out of the car. After the driver and one passenger exited, J.R. slid into the drivers seat and started the car. The car was in reverse and crashed into the police car before J.R. took off, drove 100 yards, wrecked in a ditch, and was apprehended. The parties dispute whether J.R. intentionally or accidentally drove into the officers' car. J.R. was 17 years and two months old at the time of the offense.

On July 11, 2001, the government moved to transfer J.R., pursuant to 18 U.S.C. § 5032, to adult status for prosecution. At the transfer hearing, the district court heard testimony from tribal law enforcement officers and FBI officials regarding the incidents leading to J.R.'s arrest. The district court also reviewed a summary of J.R.'s tribal criminal history submitted by the government as Exhibit 1. The exhibit was prepared by the Tribal Prosecutor's Office and was received into evidence through the testimony of a detective. The summary included three charges which had been dismissed with prejudice. Despite the fact that no state juvenile records

were submitted to the court, FBI Agent Meloch testified that he had found an Arizona criminal history including a shoplifting incident.

J.R. offered testimony from Dr. Martig regarding his psychiatric evaluation of J.R. Dr. Martig recommended that J.R. not be transferred to adult status. The government did not offer contradictory psychiatric testimony as it had foregone its opportunity to have J.R. evaluated.

On October 29, the district court granted the government's motion to proceed against J.R. as an adult. The order was based in part on an assessment of J.R.'s "prior delinquency record." The court found the prior record to include the dismissed tribal charges, as well as the state charges for which it never received any documentary evidence. Based on the summary of J.R.'s tribal record and the testimony regarding his state record, the district court found that J.R.'s other court records had been presented to the court:

> The juvenile's records from other Courts have been presented to the Court. The juvenile has an extensive Tribal juvenile offense record that began at twelve years of age, and has grown progressively serious as the juvenile has aged. His record includes arrests for mischief, assault, disorderly conduct, and convictions for possession of firearms, illegal possession, carrying a concealed weapon, and disobedience to the Tribal Court. The juvenile also has a record with the State Court for shoplifting and possession of marijuana.[1]

---

1. There appears to be no basis in the record to support the finding that J.R. had a state juvenile record for possession of marijuana. FBI agent Meloch testified that he found a state criminal record only for shoplifting. The court also heard testimony from Steve Larson, a detective with the Salt River Tribal Police, explaining the one page summary of tribal charges that it received. When asked by the court why the summary showed four entries for illegal possession on November 28, 2000, Larson explained that the tribal code covers possession of firearms, drugs, and paraphernalia, and indicated that his notes showed that these possession charges for J.R. included firearm, ammunition, and marijuana possession. The district court may have confused testimony regarding the state and tribal charges.

## STANDARD OF REVIEW

■ We review the district court's decision to transfer for an abuse of discretion. *See Gerald N.,* 900 F.2d at 191.

## DISCUSSION

### I. District Court Jurisdiction

J.R. argues that the district court lacked jurisdiction because it had not received J.R.'s juvenile records when it made the transfer order.

### A. Juvenile Delinquency Act Records Requirement and Jurisdiction

■ The Juvenile Delinquency Act, 18 U.S.C. §§ 5031–42, requires that, prior to a juvenile's transfer to adult prosecution, the prior juvenile court records must be received by the court:

> A juvenile shall not be transferred to adult prosecution nor shall a hearing be held under section 5037 (disposition after a finding of juvenile delinquency) until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032. We have held this requirement to be jurisdictional. *See United States v. Ceja–Prado,* 333 F.3d 1046, 2003 WL 21460868, at *2 (9th Cir. Jun.25, 2003) (citing *United States v. Doe,* 170 F.3d 1162, 1165 (9th Cir.1999)); *United States v. Doe,* 13 F.3d 302, 304 (9th Cir.1993).[2]

It is undisputed that the district court never obtained J.R.'s official juvenile records from Arizona and only heard about the records through testimony. It is also undisputed that J.R.'s tribal records were presented only in the form of a one-page summary. The United States argues that these summaries and testimonies regarding the record were adequate and that requiring the clerk's copy of the record would be elevating "form over substance." This argument is entirely without merit. By stating that the "court records" must be "received," the statute clearly contemplates that the court should receive documentary evidence. Where this is not available or where there is no record, the clerk must so certify "in writing." Requiring an official documentary record, rather than a description of the record prepared by prosecution witnesses, also comports with common sense. The official record will provide a more detailed, thorough, and accurate explanation of any previous charges and convictions and will be the most reliable source for such information. In contrast, the prosecution's testimony is much less reliable given both the nature of testimonial as opposed to documentary evidence and the prosecution's motivation to omit particular details about the prior record. We have previously required that only an official record, certified by the clerk of court, be admitted. *See, Doe,* 13 F.3d at 304 (dismissing prosecution both because records were tardy and because they were certified by an Assistant United

---

**2.** Although *Doe,* 13 F.3d 302, was based on the prior version of § 5032, which required the records to be received by the court prior to the commencement of any proceedings, rather than prior to the transfer order, nothing in the 1994 amendments to § 5032 changed its jurisdictional nature. In *United States v. Lyndell N.,* 124 F.3d 1170, 1171–72 (9th Cir.1997), we did distinguish *Doe* on the basis of the amendments to § 5032. We held that the new requirement to file juvenile rec-

ords prior to transfer, rather than prior to the initiation of proceedings, could be applied to prosecution for a crime committed prior to the enactment of the amendment. We therefore rejected the juvenile's argument that the district court lacked jurisdiction due to the United States' failure to file the record prior to the initiation of proceedings. *Id.* However, we did not modify *Doe's* holding that the record requirement in § 5032 is jurisdictional.

States Attorney rather than by clerk of juvenile court). The district court was required to receive J.R.'s official juvenile records prior to transferring him for prosecution as an adult.

**B. Waiver**

■ Appellee argues that J.R. waived this argument by not raising it below. This argument is without merit. J.R.'s situation is identical to the juvenile defendant in *Doe.* In that case, although Doe did not object to an improper certification before the district court, on appeal, we vacated and remanded the case because the district court did not have jurisdiction over the case. 13 F.3d at 305.

**C. Harmless Error**

■ Finally, the government contends that if the district court erred, the error was harmless because the same arrests would have been shown by the court records. We cannot agree, however, that for a court to proceed in a criminal case on the absence of or in excess of its jurisdiction can ever be harmless. Moreover, court records include additional information, such as psychiatric reports, probation reports, and plea agreements, highly relevant to the individualized assessment a district court is required to undertake before transferring a juvenile to adult status.

**II. Prior Delinquency Record**

■ J.R. also argues that the court abused its discretion by considering unadjudicated arrests as part of his "prior delinquency record." The Juvenile Delinquency Act requires the court to consider specific factors before transferring the juvenile:

Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juve-

nile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems. In considering the nature of the offense, as required by this paragraph, the court shall consider the extent to which the juvenile played a leadership role in an organization, or otherwise influenced other persons to take part in criminal activities, involving the use or distribution of controlled substances or firearms. Such a factor, if found to exist, shall weigh in favor of a transfer to adult status, but the absence of this factor shall not preclude such a transfer.

18 U.S.C. § 5032. The district court must balance these factors in an effort to determine the possibility of rehabilitation if the juvenile is found guilty. *Gerald N.,* 900 F.2d at 191. The court is required to make findings regarding each factor and specifically set forth the findings. *Id.*

This issue has not been addressed in this Circuit. We note further that the circuits are split on the issue. Some circuits have held that unadjudicated charges cannot be considered as part of the juvenile's delinquency record. *See United States v. LWO,* 160 F.3d 1179, 1184 (8th Cir.1998); *In Re: Sealed Case,* 893 F.2d 363, 369 (D.C.Cir.1990). Other circuits, however, have held that "record," as used in § 5032, includes both arrests and convictions. *See United States v. Wilson,* 149 F.3d 610, 613 (7th Cir.1998); *cf. United States v. Anthony Y.,* 172 F.3d 1249, 1253 (10th Cir.1999) (permitting unadjudicated offenses to be considered under other statutory factors).

We are reluctant to address this issue in the absence of the juvenile's complete record and without affording the district court the first opportunity to address it, particularly because the appropriate standard of review appears to be whether the district court abused its discretion by considering unadjudicated arrests, either as part of J.R.'s juvenile record, or under other statutory factors. We therefore leave it to district court to address on remand.[3]

## CONCLUSION

Because the district court transferred J.R. to adult prosecution without jurisdiction, we reverse the order and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

**3.** Because we do not reach this issue and remand it to the district court, we also do not reach the government's contention that J.R. also waived this issue by not objecting to the evidence in the trial court.