**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**John DOE, a juvenile, Defendant–Appellant.**

No. 02–10170.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 2003.

Withdrawn from Submission
Dec. 30, 2003.

Resubmitted March 12, 2004.

Filed May 11, 2004.

Rubin Salter, Jr., Tucson, Arizona, for the defendant/appellant.

Richard Gordon, Assistant United States Attorney, Tucson, Arizona, for the plaintiff/appellee.

Before: SCHROEDER, Chief Judge, CANBY, REINHARDT, TROTT, T.G. NELSON, HAWKINS, THOMAS, W. FLETCHER, BERZON, TALLMAN, and RAWLINSON, Circuit Judges.

CANBY, Senior Circuit Judge.

This is an appeal from a judgment of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042. The primary question for decision is whether the district court should have dismissed the information for violation of the special speedy trial provision of the Delinquency Act, 18 U.S.C. § 5036. The answer depends on the date on which the 30–day clock of § 5036 began to run. We join our sister circuits that have addressed the question and hold that time begins to run at the commencement of federal detention of the juvenile on the federal delinquency charge. By that calculation, there was no violation of § 5036 in this case and we accordingly affirm the district court's ruling.

A second issue that we must resolve concerns one of the requirements of § 5032 of the Delinquency Act. The section provides, in pertinent part, that no hearing shall be held for disposition of a juvenile after a finding of delinquency "until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable." 18 U.S.C. § 5032. The record in this case does not reflect that the district court received the specified records or certification. No objection was entered. We conclude that this requirement of § 5032 is not jurisdictional, and that any deficiency in the district court's compliance with the requirement did not rise to the level of plain error. We accordingly affirm the judgment of the district court.

## I. THE 30–DAY SPEEDY TRIAL PROVISION OF § 5036

### Factual Background

The appellant, whom we refer to as John Doe, is a juvenile Indian who assaulted a teacher in her home on the Tohono O'Odham Indian Reservation in Arizona in August 1999. Doe turned himself in to tribal authorities two months later. Two days thereafter, on October 22, 1999, tribal authorities charged Doe with three sexual assault offenses, one of which was the August assault against the teacher. Doe remained in tribal detention on those charges, and the tribal court ordered psychological evaluations.

It is not entirely clear from the record when federal authorities were notified of

Doe's detention and charges. Doe's counsel in the tribal proceedings testified in district court that during tribal plea negotiations on November 10, 1999, the tribal prosecutor represented that he had been informed that, if tribal plea negotiations were successful, a federal declination to pursue charges could be obtained. There is nothing in the record to indicate who in the federal government had been contacted or when the contact occurred. The Assistant United States Attorney stated in the district court hearing on the motion to dismiss that she was not aware that anyone in her office knew of the case until they were informally advised of it in late November or early December. She asserted that in late December an investigator brought a report to her and a case investigative file was opened on December 30 in the office of the United States Attorney.

On January 12, 2000, the tribal prosecutor informed defense counsel that the federal government had changed its position and that federal charges would be filed. On January 13, the tribal prosecutor informed the tribal court that the federal authorities intended to prosecute and that he expected a federal writ to issue on or about January 24. At that point, the tribal prosecutor and defense counsel stipulated to a stay of all tribal proceedings; a tribal court hearing that had been set for January 14 was vacated.

On March 15, 2000, the United States filed an information charging Doe with three counts of delinquency, all arising from the assault on the teacher in August 1999. On the same date, the United States Attorney filed a certification pursuant to 18 U.S.C. § 5032 stating that the counts charged were "crimes of violence that are felony offenses; and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." This certification is a precondition to federal prosecution of juvenile delinquency. § 5032. On March 17, 2000, the federal court issued a writ of habeas corpus ad prosequendum but the writ was not executed until March 27, 2000. Doe was released into federal custody by tribal authorities on or about that date. He made his first appearance before a federal magistrate judge on March 30, 2000, and was ordered detained pending trial, which was set for May 4, 2000.

On April 19, 2000, Doe moved to dismiss for violation of the 30–day speedy trial provision of § 5036. Doe also filed a motion to continue the trial for at least 30 days to permit a psychological examination. The district court denied the motion to dismiss, but granted the continuance. Additional continuances and a period of incompetency caused further consensual delay that is not in issue. Doe ultimately pleaded guilty but reserved his right to appeal the denial of his speedy trial motion. He was sentenced to two concurrent terms of approximately 39 months (ending with his 21st birthday).

Upon appeal, a three-judge panel of this court held that the speedy-trial provision of § 5036 had been violated, and reversed the judgment. *See United States v. Doe*, 324 F.3d 1057, 1061 (9th Cir.2003). The United States petitioned for rehearing en banc. The petition was granted and the three-judge opinion vacated, *see United States v. Doe*, 345 F.3d 1119 (9th Cir.2003), bringing this matter before this en banc court.

### *Discussion*

██ The question for decision is when the clock begins to run for purposes of the speedy trial provision of the Juvenile Delinquency Act, § 5036. We conclude that the 30–day clock starts when federal detention on the federal delinquency charge commences. Section 5036 provides in relevant part:

If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case.

18 U.S.C. § 5036. Under the plain meaning of this provision, time begins to run on "the date upon which such detention was begun." *Id.*

One possible literal reading of this phrase would start the clock when *any* detention began. In practice, such an interpretation becomes nonsensical. In many cases, a juvenile might be held in state or tribal detention for more than 30 days before federal authorities even learn of the crime or the detention. Federal prosecution would be time-barred before it could begin. For this reason, other circuit courts have read "detention" in § 5036 to mean "federal detention," and have started the speedy-trial clock at its commencement. *See, e.g., United States v. Three Male Juveniles*, 49 F.3d 1058, 1064 (5th Cir.1995); *United States v. Doe*, 642 F.2d 1206, 1208 (10th Cir.1981); *see also United States v. Wong*, 40 F.3d 1347, 1371 (2d Cir.1994). This reading is buttressed by the requirements of § 5033 of the Juvenile Delinquency Act: whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer must notify the Attorney General and parents or guardian of the juvenile, and the juvenile must "be taken before a magistrate judge forth-with." *Id.* Some of these requirements make little sense unless "custody" is understood to be "federal custody." *See United States v. Doe*, 155 F.3d 1070, 1076–77 (9th Cir.1998) (en banc); *Doe*, 642 F.2d at 1207.

In this circuit, however, we placed a gloss on § 5036 that resulted in the starting of the speedy-trial clock at a time that did not necessarily coincide with the beginning of federal custody. In *United States v. Andy*, 549 F.2d 1281, 1283(9th Cir.1977), we held that § 5036 must be read in conjunction with § 5032. Section 5032 provides, among other things:

> A juvenile alleged to have committed an act of juvenile delinquency ... shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.[1]

Our opinion in *Andy* agreed that it made no sense to start the clock when tribal custody began, but then proceeded to hold

---

**1.** The parties do not dispute the applicability of the Juvenile Delinquency Act, and particularly §§ 5032 and 5036, to this case. The threshold certification requirement of § 5032 remains the same even though Doe is an Indian subject to tribal jurisdiction. *See United States v. Juvenile Male*, 864 F.2d 641, 644– 45 (9th Cir.1988) (holding that subsections (1) and (2) of § 5032 did not require certification that *tribe* lacked or refused to assume jurisdiction or lacked available juvenile programs; it was sufficient to certify that state did so); *United States v. Male Juvenile*, 280 F.3d 1008, 1014–17 (9th Cir.2002).

that the process of certification under § 5032 entered into the speedy-trial calculation. *See Andy,* 549 F.2d at 1283. *Andy* held that time began to run under § 5036 on:

> (1) the date that the Attorney General certifies, or in the exercise of reasonable diligence, could have certified, to the conditions stated in § 5032, or (2) the date upon which the Government formally assumes jurisdiction over the juvenile, whichever event earlier occurs.

*Id.* We later made clear that, for purposes of alternative (2), the federal government "formally assumes jurisdiction" over a juvenile when it arrests the juvenile and places him or her in federal custody. *See United States v. Eric B.,* 86 F.3d 869, 873–74 (9th Cir.1996).

The application of the *Andy* formula would clearly require the dismissal of Doe's information in the present case. Wholly apart from the question of when the United States Attorney "could have certified" the necessary matters, the actual certification was filed on March 15, 2000. Doe's motion to dismiss was filed on April 19, 2000—more than 30 days after certification. By *Andy's* reasoning, time had run under § 5036.

We conclude, however, that *Andy's* formulation is unsound and *Andy* must be overruled. *Andy* has been followed by no other circuit and has been criticized by several for what we regard as sound reasons. First, *Andy* is a strained combination of two statutory provisions with different purposes, neither of which requires an effect upon the other. *See United States v. Sechrist,* 640 F.2d 81, 84 (7th Cir.1981); *United States v. Doe,* 882 F.2d 926, 928 n.

3 (5th Cir.1989). Section 5036 is a straightforward speedy trial provision for juveniles in detention. Once "detention" is understood to be "federal detention," the requirement of trial "within thirty days from the date on which such detention was begun" is direct and without any hint that certification under § 5032 affects the process.

Section 5032, on the other hand, is designed for a purpose wholly independent of speedy trial provisions or detention. As the government puts it, this "need" certification requirement of § 5032 creates a rebuttable presumption against federal jurisdiction in juvenile cases.[2] *See United States v. Juvenile Male,* 864 F.2d 641, 644 (9th Cir.1988). There is no reason why certification under § 5032, which may occur when there is no detention at all, should start the speedy trial clock of § 5036 running.

Particularly troublesome is *Andy's* rule that time runs from the date on which the Attorney General "in the exercise of reasonable diligence, could have certified" to the necessary conditions for federal prosecution. *Andy,* 549 F.2d at 1283. For courts to determine when a prosecutor "could have" decided that federal charges were appropriate intrudes into an area that courts are properly reluctant to enter. *See United States v. F.S.J.,* 265 F.3d 764, 768–69 (9th Cir.2001). Moreover, *Andy's* rule creates an incentive that frustrates a purpose of § 5032. A decision by the Attorney General or his delegate that a federal prosecution of juvenile delinquency is warranted is meant to be a careful and deliberate decision. *See Juvenile Male (Kenneth C.),* 241 F.3d at 686–87. But

---

The parties also do not dispute that the Attorney General has delegated certification authority to United States Attorneys. *See United States v. Juvenile Male (Kenneth C.),* 241 F.3d 684, 686 (9th Cir.2001), *cert. denied,* —— U.S. ——, 124 S.Ct. 215, 157 L.Ed.2d 156 (2003).

2. The "need" certification requirement of § 5032, which is a precondition to initiation of federal juvenile proceedings, is to be distinguished from the juvenile record certification requirement of § 5032, discussed in Section II, below.

*Andy* creates an incentive for the Attorney General to certify and file charges the moment that some court later might determine he "could have" certified the necessary conditions. *See Eric B.,* 86 F.3d at 874. What was to have been a considered decision thus becomes a hasty one.

We therefore overrule *Andy*. In its place, we hold that the 30–day speedy trial clock begins to run from the time of "detention," as provided by § 5036, and that "detention" means "federal detention." Moreover, the federal detention must be on the charge of alleged delinquency for which the juvenile is held in custody pending trial. Otherwise, unrelated federal detention might cause time to run before federal authorities became aware of the facts giving rise to a charge of delinquency. *See United States v. Juvenile Male,* 74 F.3d 526, 528–29 (4th Cir.1996). Accordingly, the 30–day clock begins to run from "the date upon which [federal] detention was begun" on the charges of delinquency for which the "alleged delinquent" is in custody "pending trial." 18 U.S.C. § 5036. This formulation, we conclude, best follows the statutory language of § 5036 in light of the practical necessities of federal jurisdiction in juvenile cases.

It will ordinarily be a relatively simple task to determine when federal detention on the charge of delinquency began, but we recognize that factual disputes might arise in some cases over whether a particular detention was federal or was on the pending delinquency charge. There may be instances, for example, when federal detention commences even though the juvenile is not held in federal facilities or directly by federal personnel. We have no reason to speculate on these or other factual issues that might arise, because we find no triable factual dispute in this case. Doe was taken into tribal custody on three separate tribal charges. There is nothing in the record to indicate that his tribal custody was ordered by federal authorities or was maintained for federal purposes. There is no suggestion of bad faith collusion between federal and tribal authorities in detaining Doe on the tribal charges. Unquestionably, the tribal authorities proved willing to release Doe for federal prosecution and anticipated federal prosecution for some time before that release. But Doe was held on three tribal charges, two of which were unrelated to the federal charges. Nothing but the stipulation of Doe's counsel and the tribal prosecutor appears on this record to have prevented tribal action on the tribal charges. Even if the tribe was willing to forestall action on its charges in light of the federal prosecution—a point not clear from the record— that fact did not render the tribe's detention federal. Although the length of delay between the issuance and execution of the habeas writ that permits the federal government to take a juvenile into custody might under some circumstances give rise to questions as to the purposes of the continued detention in a tribal facility, the district court's finding that the detention was tribal prior to Doe's delivery to federal authorities was not clearly erroneous in light of the whole record.

Under that finding, Doe's motion was properly denied. He was delivered into federal custody on March 27, 2000. His motion to dismiss was filed on April 19, 2000, less than 30 days after his federal detention began. On the same date, Doe filed a motion for continuance to permit a psychological examination. The district court denied the motion to dismiss because the 30–day time limit had not run. The court then granted the continuance, which began a series of consensual delays that the parties agree tolled the further running of the 30–day period.[3] There was accordingly no error.

---

**3.** Section 5036 sets out exceptions to the thir- ty-day rule for delays caused or consented to

## II. THE JUVENILE RECORD REQUIREMENT OF § 5032[4]

### Factual Background

After Doe was adjudicated to be a delinquent, the district court held a dispositional hearing. The only presentation of Doe's juvenile record in the district court record was in the predisposition report, which was delivered to the court prior to the dispositional hearing. That report recited that the tribal justice center "currently is not releasing juvenile records." It then set forth Doe's history of delinquency as "obtained from a Pretrial Services report." The predisposition report then listed several delinquency referrals of Doe to the tribal justice system, and described two additional sexual assaults that were the subject of pending tribal charges at the time Doe was delivered into federal custody. Defense counsel did not object to any of these recitals in the predisposition report and did not contest or question their factual accuracy.[5] There was no objection to the absence of official juvenile court records. The district court sentenced Doe at the conclusion of the hearing.

### Discussion

The relevant provision of § 5032 states:

A juvenile shall not be transferred to adult prosecution nor shall a hearing be held under section 5037 (disposition after a finding of juvenile delinquency) until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032.

The record does not indicate compliance with these requirements. The district court does not appear to have received Doe's actual juvenile records, and there is no certificate from the clerk of the tribal juvenile court regarding Doe's records.[6] We have previously held that § 5032 requires the district court to receive the "official documentary record" and that summaries and testimony about a juvenile's record presented by the prosecution are not sufficient. *United States v. Juvenile Male,* 336 F.3d 1107, 1110–11 (9th Cir.2003); *see also United States v. Doe,* 13 F.3d 302, 304 (9th Cir.1993) (finding record insufficient when certified by prosecutor instead of clerk of court).[7] For the same reason, summaries of Doe's juvenile delinquency history in his predisposition report do not satisfy the strict requirements of the statute.

The question for our decision concerns the consequences of this omission. Our circuit has held that the juvenile record provision of § 5032 is jurisdictional.[8] *Ju-*

---

by the juvenile or his counsel, or delays that are in the interest of justice in the particular case, but there is no contention that any of these exceptions applied at the time Doe made his motion to dismiss.

4. This issue first arose just prior to oral argument in the en banc rehearing. We ordered and received supplemental briefing on the subject.

5. The only objection by defense counsel was to the consideration of any offenses not listed in the predisposition report.

6. The parties do not dispute that, in this case, the appropriate "juvenile court" for purposes

of § 5032 is the juvenile court of the Tohono O'Odham Nation.

7. The cited decision in *Doe* has been superseded in part by statute on other grounds, as explained in *United States v. Lyndell N.,* 124 F.3d 1170 (9th Cir.1997).

8. We have also held that the "need" certification requirements of § 5032 for initiation of juvenile proceedings in federal court, discussed in Section I above, are jurisdictional. *See United States v. Doe,* 170 F.3d 1162, 1165 (9th Cir.1999); *United States v. Ceja–Prado,* 333 F.3d 1046 (9th Cir.2003). Our ruling

venile Male, 336 F.3d at 1110; *Doe*, 13 F.3d at 304–05. The Third Circuit has also adopted this view, at least with regard to transfer to adult prosecution. *See Impounded (Juvenile I.H., Jr.)*, 120 F.3d 457, 460 (3d Cir.1997). If we adhere to this approach, then the district court's disposition was void and will have to be vacated because a district court's error in proceeding without jurisdiction can never be harmless. *See Juvenile Male*, 336 F.3d at 1111.

We conclude, however, that these prior decisions are in error to the extent that they regard the juvenile record certification requirement to be jurisdictional. Nothing in the phraseology of the record certification provision of § 5032 requires or necessarily suggests that its commands go to the jurisdiction of the court. It is true that receipt of a record or certificate concerning the record is unequivocally required before a hearing is held, but this command is no different from a number of other requirements that govern proceedings in the district courts. To convert such commands into jurisdictional imperatives creates an unworkable inflexibility and leads to unnecessary reversals on matters that were of no concern to the parties during the district court proceeding or even on appeal. Indeed, some circuits that have characterized the record certification requirement as jurisdictional have responded to this problem by interpreting the requirement flexibly, so that the district court retains jurisdiction even when

the statute is not strictly complied with. *See Wong*, 40 F.3d at 1369–70; *United States v. Parker*, 956 F.2d 169, 170 (8th Cir.1992).[9]

Even more to the point, the Supreme Court has counseled against construing mandatory requirements concerning the conduct of a proceeding as "jurisdictional." In *Kontrick v. Ryan*, —— U.S. ——, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), the Court declined to treat as jurisdictional a bankruptcy rule stating that objections to discharge "shall be filed no later than" a specified date. *Id.* at 911 (quoting Bankr.R. 4004(a)). The Court conceded that "[c]ourts, including this Court … have been less than meticulous" when they refer to emphatic time limitations as "jurisdictional." *Id.* at 915. The Court regarded this tendency as erroneous, however. "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.*; *see also United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that a failure to allege drug quantity in an indictment was not a "jurisdictional" defect under current meaning of "jurisdiction").

 The Supreme Court's rationale in *Kontrick* is readily applicable here. There is no question that, once the requisite cer-

---

here does not extend to this certification requirement.

**9.** Both *Wong* and *Parker* were decided under an earlier version of § 5032, which provided that *"any proceedings* against a juvenile under this chapter or as an adult *shall not be commenced* until any prior juvenile court records of such juvenile have been received by the court." *See Wong*, 40 F.3d at 1368 (quoting 18 U.S.C. § 5032 (1993)) (emphasis added).

As the government points out, this formulation is more susceptible than the present § 5032 to interpretation as a jurisdictional requirement. The present § 5032 no longer requires records at the threshold of a proceeding, but instead specifies that no juvenile shall be transferred for adult prosecution, nor a dispositional hearing held after an adjudication of delinquency, "until" the district court receives the records or a certificate concerning the records.

tification of need for federal proceedings established initial jurisdiction, the federal district court had subject-matter jurisdiction to adjudicate delinquency or to transfer for adult prosecution. There is also no question that it had personal jurisdiction over Doe. The requirement that the district court receive Doe's juvenile records or a certificate concerning the records went to the conduct of the proceeding, not the court's subject-matter jurisdiction to proceed or its personal jurisdiction over Doe. Indeed, if the record certification requirement is to be interpreted as truly "jurisdictional," then the district court lost jurisdiction over a proceeding in which it admittedly had jurisdiction through the adjudication of delinquency. Such a loss of jurisdiction not arising from a lack of power over the subject matter or over the person is inconsistent with the Supreme Court's reasoning in *Kontrick*.

We conclude, therefore, that the district court had subject-matter and personal jurisdiction to conduct Doe's dispositional hearing despite any deficiency in compliance with the record certification requirements of § 5032. It is true that the record certification provision of § 5032 is mandatory, even though not jurisdictional. If Doe had objected, he would have been entitled to insist on full compliance in the district court.[10] No reason appears in the record why such an objection would not have led to a cure of any deficiency. There was no objection, however, and we accordingly proceed to determine whether reversal is required on the ground of plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Cotton*, 535 U.S. at 631.

 In order to reverse for plain error, we must find not only that there was error and that it was plain, but also that it affected substantial rights and met the discretionary test of " 'seriously affect[ing]

the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Even if the district court here committed error that was plain, reversal is not required because the error neither affected Doe's substantial rights nor seriously affected the fairness, integrity, or public reputation of judicial proceedings. Although there was no formal certification from the tribal juvenile court in the record, the predisposition report stated that the juvenile court was not releasing records, but that the information concerning Doe's history of delinquency had been obtained from a Pretrial Services report. There is no hint in the record that this source was not reliable or that the information was not correct. Doe stated at the dispositional hearing that his attorney had discussed the predisposition report with him, but neither Doe nor his attorney suggested that there were any inaccuracies in the report. Indeed, they have suggested no such inaccuracies on appeal. We fail to see, therefore, how Doe would have been any better off if the juvenile court record had been certified in the manner required by § 5032. We therefore decline to reverse on the ground of plain error.

### III. CONCLUSION

The district court did not err in denying Doe's motion to dismiss for violation of the speedy trial provisions of § 5036. The speedy-trial clock of § 5036 begins to run at the commencement of federal detention on the federal delinquency charge for which the alleged delinquent is being held pending trial. To the extent that it holds otherwise, this court's decision in *United*

---

10. If Doe did not secure full compliance with § 5032 in the district court after objection, he would be entitled to reversal on appeal unless the error was harmless.

*States v. Andy,* 549 F.2d 1281 (9th Cir. 1977), is overruled.

The record certification requirements of § 5032 are not jurisdictional. To the extent that they rule to the contrary, our decisions in *United States v. Juvenile Male,* 336 F.3d 1107, 1110 & n. 2 (9th Cir.2003), and *United States v. Doe,* 13 F.3d 302, 304–05 (9th Cir.1993), are overruled. Any deficiencies in the district court's compliance with the record-certification requirements of § 5032 in Doe's case did not amount to plain error requiring reversal.

The judgment of the district court is **AFFIRMED.**