**UNITED STATES of America, Plaintiff–Appellee,**

v.

**BRANDON P., Juvenile Male, Defendant–Appellant.**

No. 03–10646.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 2004.

Filed Oct. 13, 2004.

Thomas Hoidal, Hoidal & Hannah, P.L.C., Phoenix, AZ, for the defendant-appellant.

Joan G. Ruffennach, Assistant United States Attorney and Michael T. Morrissey, Chief, Appellate Section, Phoenix, AZ, for the plaintiff-appellee.

Before PREGERSON and KOZINSKI, Circuit Judges, and RHOADES,* District Judge.

RHOADES, District Judge:

## I. Introduction

Defendant B.P., a juvenile at the time he allegedly participated in the rape and murder of a woman, challenges the district court's denial of his motion to dismiss for violation of his speedy trial rights and the district court's order transferring his case for adult prosecution.

## II. Factual Background

B.P. is accused of participating in the brutal rape and murder of a woman on the Navajo Indian Reservation. He was arrested on August 22, 2002, by an FBI agent and Navajo Police. B.P. remained in Navajo tribal custody until March 2003. A juvenile information was filed against B.P. in federal district court on March 7, 2003, alleging various crimes, including first-degree murder, kidnaping and aggravated sexual abuse. On March 10, 2003, B.P. was transferred to federal custody.

The government filed a motion to transfer the case for adult prosecution on March 21, 2003. A month later, B.P. filed a motion to dismiss for violation of the speedy trial provision of the Juvenile Delinquency Act, 18 U.S.C. § 5036. The district court denied the motion to dismiss and granted the motion to transfer. This appeal followed.

---

* The Honorable John S. Rhoades, Sr., Senior United States District Court for the Southern District of California, sitting by designation.

## III. Discussion

### 1. Speedy Trial Claim

█ Before reaching the merits of B.P.'s speedy trial claim, we must determine whether we have jurisdiction over this interlocutory appeal. "[I]nterlocutory appeals are not favored." *United States v. Mehrmanesh*, 652 F.2d 766, 768 (9th Cir. 1981). Thus, 28 U.S.C. § 1291, which grants the federal courts of appeals jurisdiction to review all "final decisions" of the district courts, typically restricts review to final judgments. However, federal courts have recognized an exception to this general rule with respect to "collateral orders" that "affect rights that are independent of the merits of the action and too important to be denied prompt review." *Mehrmanesh*, 652 F.2d at 768.

█ The Supreme Court has "established a three-part test to determine whether an interlocutory appeal should be allowed." *Id.* at 768. "An order before final judgment may be appealed if: (1) it completely disposes of the issue in question; (2) it is totally unrelated to the merits of the case; and (3) the right asserted would be irreparably lost if the appeal were delayed until after final judgment." *Id.* (citing *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)).

In *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), the Supreme Court decided that an order denying a motion to dismiss because of an alleged violation of the sixth amendment right to a speedy trial is not a proper subject of an interlocutory appeal. The Court noted that the right being asserted by the defendant would not be irreparably lost if review was not permitted until a final judgment had been entered. The Court distinguished double jeopardy claims and claims for reduced bail because those claims "involve[ ] an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *Id.* at 860, 98 S.Ct. 1547. The Court explained:

> Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.... [T]hat loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.

*MacDonald*, 435 U.S. at 860–61, 98 S.Ct. 1547.

After *MacDonald*, we decided *Mehrmanesh*. We held that an order denying a motion to dismiss for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, is not interlocutorily appealable. *See Mehrmanesh*, 652 F.2d at 768–70. Following the reasoning of *MacDonald*, we concluded that such an order is not appealable because the right to a speedy trial under the Speedy Trial Act is not irreparably lost if the appeal is delayed until after final judgment. Although we noted that "a claim under the Speedy Trial Act differs in some significant ways from a claim under the sixth amendment speedy trial clause," and therefore "a statutory speedy trial claim produces somewhat different results under the three-part *Abney* test than" a sixth amendment speedy trial claim, we nonetheless held that a statutory speedy trial claim "fails in the end to qualify for an interlocutory appeal." *Id.* at 769. As in the case of a sixth amendment speedy trial claim, "the right to a dismissal under the Speedy Trial Act does not embody a 'right not to be tried.'" *Id.* Rather, "[i]t is the delay and not the trial that is the

target of the Act." *Id.* Thus, we concluded that "[p]roceeding with trial does not cause or compound the harm at which the statute is aimed." *Id.* at 769–70.

We are now confronted with whether a juvenile may take an interlocutory appeal of an order denying his motion to dismiss under the Juvenile Delinquency Act's speedy trial provision. We conclude that *Mehrmanesh* is controlling authority and compels the conclusion that the denial of such a claim is not the proper subject of an interlocutory appeal. As in the sixth amendment and Speedy Trial Act context, the right that is being asserted is the right to a speedy trial: "It is the delay and not the trial that is the target of the" juvenile speedy trial provision. *Id.* at 769. Because it is the delay that is the focus of a juvenile's speedy trial claim, allowing a juvenile to be tried prior to resolution of the speedy trial claim will not "cause or compound the harm" at which the juvenile speedy trial provision is aimed. *Id.* at 769–70.

B.P. relies on *United States v. Gerald N.*, 900 F.2d 189 (9th Cir.1990) (per curiam) as authority for the proposition that an interlocutory appeal should be allowed here; however, *Gerald N.* is not on point. In *Gerald N.*, we held that the collateral order exception applies to an appeal of a decision to transfer a juvenile for adult prosecution because the "legal and practical value of the right to be tried as a juvenile" would be lost without the right to immediately appeal the transfer order. *Id.* at 190. The right asserted here is not the right to be tried as a juvenile or even the right not to be tried, but rather the right to be tried in a speedy manner. Whereas an immediate appeal of an order to transfer a juvenile for adult prosecution is necessary to vindicate a juvenile's right to be treated as a juvenile, an immediate appeal of an order denying a juvenile's motion to dismiss on speedy trial grounds is not necessary to vindicate a juvenile's speedy trial right.

The Sixth Circuit has held that an order denying a juvenile's speedy trial claim is interlocutorily appealable. It reasoned:

A speedy trial claim following a transfer order in the juvenile context implicates the very concern which allows us to hear appeals on the merits of transfer orders under the collateral order doctrine— namely, if defendants like A.R. have to wait until after trial and a final judgment to appeal the claim, the adult trial would have already sacrificed the "legal and practical benefits of being tried as a juvenile." These lost benefits include "pretrial detention in a foster home or community-based facility near the juvenile's home instead of adult prison ..., and the sealing of records and the withholding of the juvenile's name and picture from the media." Just as in the case of other substantive and procedural claims, if the speedy trial violation would have led to dismissal of the case, those "benefits" would be sacrificed by requiring an adult criminal trial before allowing an appeal for the violation.

*United States v. A.R.*, 203 F.3d 955, 963 (6th Cir.2000) (quoting *United States v. Angelo D.*, 88 F.3d 856, 858 (10th Cir.1996) (quoting *United States v. Doe*, 49 F.3d 859, 865 (2d Cir.1995))). The Sixth Circuit concluded that "[t]his 'loss' satisfies the third prong of the collateral order test, and distinguishes the juvenile context from non-juvenile cases where speedy trial claims do not meet that third prong." *Id.*

We disagree with the Sixth Circuit's application of the third prong of the collateral order doctrine—that the "*right asserted* would be irreparably lost if the appeal were delayed until after final judgment." *Mehrmanesh*, 652 F.2d at 768 (emphasis added). The right asserted in *A.R.* as well as the present case is not the right to

"pretrial detention in a foster home or community-based facility near the juvenile's home instead of adult prison" or the right to have records sealed and the juvenile's name and picture withheld from the media but, rather, *the right to a speedy trial.* Thus, as in the adult context, it is the delay—not the treatment of the juvenile as a juvenile—that is targeted by the juvenile speedy trial provision, and an immediate appeal is not necessary to vindicate this right.

■ Of course, a juvenile is not left without recourse to vindicate the rights with which *A.R.* was concerned. Rather than being implicated by the denial of a speedy trial motion, these rights are implicated by a district court's decision to transfer the juvenile for adult prosecution, which is subject to interlocutory review. *See Gerald N.,* 900 F.2d at 190.

Because we find no principled basis for refusing to follow *Mehrmanesh* in the juvenile context, we dismiss for lack of jurisdiction B.P.'s appeal of the district court's denial of his speedy trial claim.

## 2. Section 5032's Record Requirement

■ B.P. contends that the district court failed to comply with the record requirement of 18 U.S.C. § 5032 and, therefore, did not have jurisdiction to transfer him for adult prosecution. We have jurisdiction over interlocutory appeals of decisions to transfer a juvenile case for adult prosecution. *Gerald N.,* 900 F.2d at 190.

18 U.S.C. § 5032 provides in relevant part:

A juvenile shall not be transferred to adult prosecution ... until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

B.P. begins by contending that the district court violated § 5032, and therefore lacked jurisdiction to transfer his case for adult prosecution, because it did not receive certified copies of his tribal court records. However, a careful reading of § 5032 fails to reveal a requirement that the district court have *certified* juvenile records in its possession prior to making its transfer decision. Under the plain language of the statute, certification is required only when there are no prior records or the records are unavailable. That is not the case here.

We note that in *United States v. Juvenile Male,* 336 F.3d 1107 (9th Cir.2003), overruled on other grounds by *United States v. Doe,* 366 F.3d 1069 (9th Cir.2004), we stated that "[w]e have previously required that only an official record, certified by the clerk of court, be admitted." *Id.* at 1110 (citing *United States v. Doe,* 13 F.3d 302, 304 (9th Cir.1993)). In *Juvenile Male,* however, we were confronted only with whether the district court must be provided the actual documentary record, as opposed to a description of that record; we were not confronted with, nor did we decide, the issue presented here: whether the actual documentary record must be certified by the clerk of court. *Cf. Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit ...." (quoting *United States v. Johnson,* 256 F.3d 895, 914 (9th Cir.2001) (en banc) (Kozinski, J., concurring)) (internal quotation marks omitted)). Moreover, *Doe,* upon which *Juvenile Male* relied for this proposition, did not hold that juvenile records must be certified but, rather, held that the certification regarding the *absence* of a prior juvenile record must, as the statute states, come from the clerk of the juvenile court and not the

Assistant United States Attorney. *See Doe*, 13 F.3d at 304. Thus, these cases are not authority for the proposition that § 5032 requires that juvenile records that are provided to the district court be certified, and we now hold that such certification is not required.

■ B.P. also contends that the district court did not have jurisdiction to transfer his case for adult prosecution because the district court did not receive B.P.'s complete juvenile record. However, this argument is foreclosed by our decision in *Doe*, 366 F.3d 1069, in which we overruled *Juvenile Male* and held that the failure to comply with § 5032 does not deprive a district court of jurisdiction to order that a juvenile be transferred. *See Doe*, 366 F.3d at 1076.

Although the failure to comply with § 5032 did not deprive the district court of jurisdiction to order the transfer, we must nonetheless determine whether this failure requires reversal of the district court's transfer decision. As we explained in *Doe*, even though the requirements of § 5032 are not jurisdictional, they are mandatory; therefore, if a juvenile objects to the absence of certain records the juvenile is "entitled to insist on full compliance in the district court." *Id.* at 1077. However, where there is no objection, we determine whether reversal is required based on a plain error analysis.

Here, B.P. did not object to the government's failure to produce all of his juvenile records. B.P. contends that a specific objection was not necessary given that the district court on October 17, 2003, ordered that all of the records be produced. However, at the hearing on October 17, 2003, the district court ordered that the government file certified copies of the records *previously produced*. Thus, B.P. could have at that time objected to the fact that certain records were missing. Moreover, at the October 17, 2003 hearing the district court stated that the newly-produced records should be reviewed by defense counsel so he could "raise any issues" regarding the records. Because we conclude that B.P. could have but did not object to the government's failure to provide the district court with certain records, we review for plain error.

As we noted in *Doe*, to reverse for plain error, we "must find not only that there was error and that it was plain, but also that is affected substantial rights and met the discretionary test of 'seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings.'" 366 F.3d at 1077 (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotation marks omitted) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936))).

Even though the district court did not have copies of the Navajo Nation tribal court records relating to B.P.'s August 22, 2002, arrest for public intoxication and threatening, the district court did have the petition to revoke probation filed in Navajo County Juvenile Court, which lists the August 22, 2002, Navajo Tribal court charges as one basis for the petition. Moreover, FBI Special Agent ("SA") Nicolas Manns testified from personal knowledge about the circumstances giving rise to the tribal arrest and charges. As in *Doe*, 366 F.3d at 1077, "[t]here is no hint in the record that this source was not reliable or that the information was not correct." Rather, B.P. notes that SA Manns did not testify as to the specific information contained in the charging documents, the existence or non-existence of a plea agreement, the existence or non-existence of a motion to transfer in the tribal court, or about any pretrial services reports, probation reports, or psychiatric examinations. B.P. contends that without such information the

district court could not make an informed decision regarding whether to transfer. We reject this contention. The district court had a plethora of information before it upon which to base its decision to transfer, including approximately 150 pages of juvenile records (which revealed various juvenile charges and dispositions as well as evaluations of B.P.), the testimony of SA Manns and Navajo County probation officer Shanda Breed, and a psychiatric evaluation conducted for purposes of assisting the district in reaching its decision. Given the nature of the charges and all of the information the trial court had upon which to base its transfer decision, we fail to see how any additional information regarding the August 22, 2002, charges, if such information exists, would have influenced the district court's transfer decision.

B.P. also contends that records from McKinley County, New Mexico, were not produced to the district court; however, a review of the record reveals that the government produced a "rap sheet" showing charges of possession of liquor by a minor and disorderly conduct and a Nolle Prosequi indicating that the charges against B.P. were being dropped at the request of the juvenile probation officer. B.P. does not contend that these records inaccurately characterize the charges against him or the disposition of those charges. Moreover, B.P. admits that Ms. Breed testified regarding the McKinley County charges and therefore provided the district court with additional information about these charges.

B.P. quarrels with the fact that the McKinley County records were included in records from the Navajo County Juvenile Court and were not independently provided by the government; however, even if we were to find that all juvenile records must be independently provided to the district court by the government, the government's failure to comply with such a re-

quirement under these circumstances would not require reversal because the records that the district court was provided were not inaccurate.

Because we fail to see how B.P. "would have been any better off" if the district court had been provided with all of his juvenile records, *Doe,* 366 F.3d at 1077, we conclude that B.P.'s substantial rights were not affected by the fact that the district court did not have certain of B.P.'s juvenile records. Accordingly, we hold that the district court did not plainly err in ordering B.P.'s transfer without having all of his records in its possession.

### 3. Transfer for Adult Prosecution

B.P. also appeals the district court's decision to transfer his case for adult prosecution. The decision to transfer a juvenile to be prosecuted as an adult is reviewed for abuse of discretion. *United States v. Doe,* 94 F.3d 532, 536 (9th Cir.1996). "The district court abuses its discretion 'when it fails to make the required ... findings or where the findings it does make are clearly erroneous.' " *Id.* at 536 (quoting *United States v. Nelson,* 68 F.3d 583, 588 (2d Cir.1995)).

A juvenile who is 15 years or older and who is alleged to have committed an act which, if committed by an adult, would be a felony that is a crime of violence may be proceeded against as an adult by means of a transfer to adult court if the district court determines that it would be "in the interest of justice" to do so. 18 U.S.C. § 5032. "The government has the burden of establishing that prosecution as an adult is warranted." *Doe,* 94 F.3d at 536. B.P. relies on a district court case for the proposition that the government must meet its burden by clear and convincing evidence; however, we have never held that such a standard is applicable. A transfer hearing is not designed to determine whether a

juvenile defendant is guilty, or even whether he should be confined. Both of these questions are independent of the court's decision to try a defendant as an adult. We now join the numerous other circuits that apply a preponderance of the evidence standard. *See United States v. Doe*, 49 F.3d 859, 868 (2d Cir.1995); *United States v. A.R.*, 38 F.3d 699, 703 (3d Cir.1994); *United States v. Juvenile Male No. 1.*, 86 F.3d 1314, 1323 (4th Cir.1996); *United States v. T.F.F.*, 55 F.3d 1118, 1122 (6th Cir.1995); *United States v. Parker*, 956 F.2d 169, 171 (8th Cir.1992); *United States v. I.D.P.*, 102 F.3d 507, 513 (11th Cir.1996).

■ In determining whether a transfer would be in the interest of justice, a district court must consider "the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems." 18 U.S.C. § 5032. The district court must make findings with respect to each factor. *See id.* However, "a district court is not required to make a specific finding as to whether each of the six factors favors transfer to adult status or juvenile adjudication. The district court need only make specific findings as to the six factors and then balance them." *Doe*, 94 F.3d at 537. Moreover, the Juvenile Delinquency Act "does not instruct courts to weigh one factor more heavily than another, and the weight a court assigns each factor is within its discretion." *Id.* at 536.

A review of the district court's decision reveals that the district court considered each of the factors it was required to consider. In fact, the district court not only made specific findings as to each of these factors but also made specific findings as to whether each of the factors favored transfer—even though such specific findings were not required. *Doe*, 94 F.3d at 537. Because the district court made the requisite findings, the only issue is whether those findings were clearly erroneous. *See id.* at 536.

■ Defendant contends that the district court clearly erred by rejecting the conclusion of Dr. Rosensweig, a medical expert who, considering the six factors that the statute requires be considered, determined that B.P. was "salvageable" and suggested that it was possible that B.P. could be rehabilitated if he was under the court's jurisdiction until his twenty-third birthday.

We decline to hold that a district court must accept an expert's opinion regarding a juvenile's chances for rehabilitation even when the expert's opinion is uncontradicted by other expert testimony. The statute sets forth the factors that a *district court* is to consider and balance, and we have recognized that *district courts* have discretion to balance these factors. The rule B.P. advocates is a rule that, in effect, strips a district court of its discretion and places the decision to transfer a juvenile in the hands of an expert.

We note that in declining to adopt Dr. Rosensweig's conclusion, the district court stated that it was doing so because, by Dr. Rosensweig's own admission, his conclusion was based on B.P.'s self-report regarding the extent of his participation, which was inconsistent with his prior statements to law enforcement and the statements made to law enforcement by the other participants in the crime. The district court did not clearly err by refusing to adopt an expert opinion that was based on evidence that was inconsistent with the other evidence in the record.

B.P. also challenges the district court's conclusion that his prior delinquency rec-

ord does not weigh significantly against a realistic chance of rehabilitation in the juvenile system. B.P. notes that Ms. Breed testified at the transfer hearing that, after the murder, she prepared a report on him recommending that he be placed on juvenile probation with deferred jail. This statement is misleading to the extent that B.P. believes it supports a finding that there is a realistic chance that he can be rehabilitated. A review of the record reveals that Ms. Breed testified that at the time she prepared her report she did not have any information regarding the crimes of which B.P. is currently accused.

Finally, B.P. challenges the district court's conclusion that his prior offenses involved violence, contending that Ms. Breed's testimony before the trial court did not indicate that any of the charges against him involved actual violence by B.P. against any person. B.P. fails to note the difference between a finding that his prior offenses involved violence and a finding that his prior offenses involved violence directed against a person. The district court's finding that B.P.'s prior offenses involved violence was supported by Ms. Breed's testimony regarding the factual basis underlying B.P.'s charge of "disorderly conduct/domestic violence." Ms. Breed testified that on December 23, 1998, officers contacted B.P., who was arguing with his mother at their motel room. Ms. Breed testified that B.P. was disorderly and threw something in or around the room. The police incident report corroborates Ms. Breed's testimony and also states that B.P. threw rocks at the windows of the motel. The district court did not clearly err in finding that this qualifies as violent behavior.

## IV. Conclusion

We DISMISS the appeal of the denial of defendant's motion to dismiss on speedy trial grounds for lack of jurisdiction. We AFFIRM the district court's decision to transfer B.P. for adult prosecution.

DISMISSED IN PART, AFFIRMED IN PART.