**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　v.

JUVENILE,
　　　　　　*Defendant-Appellant.*

No. 05-30410

D.C. No.
CR-05-00001-2-
SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
May 4, 2006—Portland, Oregon

Filed June 22, 2006

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges, and Louis H. Pollak,* District Judge.

Opinion by Judge Pollak

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

**COUNSEL**

Palmer A. Hoovestal, Helena, Montana, for the appellant.

Lori Harper Suek, OFFICE OF THE US ATTORNEY, Billings, Montana, for the appellee.

**OPINION**

POLLAK, District Judge:

This case requires us to decide whether, when deciding a motion to transfer a juvenile to adult status pursuant to 18 U.S.C. § 5032 for criminal prosecution, a district court must assume the juvenile defendant committed the crime with which he is charged. For the reasons that follow, we hold that the district court may indulge such an assumption but is not required to do so. If the district court chooses to assume guilt, it must confine the assumption to the elements of the offense charged.

## I.  *Factual and Procedural History*

The juvenile appellant in this case, to whom we will refer as T.J.S., was charged, along with a co-defendant, with first degree murder by Information. The charge against T.J.S. arises from events occurring on June 18, 2004 on the Rocky Boy's Indian Reservation near Box Elder, Montana. The details of that day's events are, of course, in dispute.

The government's account is as follows. T.J.S., who was 15 years old at the time, was drinking alcohol with three of his

friends on the evening of June 18, 2004 when one member of the group suggested they go pick up Alton Alexander so he could buy beer for the group. T.J.S. rejected that idea, expressing some disdain for Alexander as a "rat" because Alexander had recently foiled an attempt by T.J.S. and others to steal a car. Later in the evening, T.J.S. obtained a length of pipe and suggested beating up Alexander. T.J.S. and the other boys were also carrying knives. The group went to Alexander's house and invited him to go drinking with them, which he agreed to do. The four boys drove Alexander to a nearby dump site. While they were in the car, T.J.S. accused Alexander of being a rat, and Alexander exited the car and attempted to flee. T.J.S. and the other boys chased him down, beat him with a pipe, cut and stabbed him with knives, and ran over him with their car as they left the scene. Alexander was found dead at the dump site less than an hour after he was seen getting into the car with T.J.S. and his friends. The cause of Alexander's death was determined to be blunt force injuries to the head and stab wounds to the head and trunk.

T.J.S. does not deny most of the government's account of events leading up to the confrontation with Alexander at the dump site. However, he claims that he did not plan the attack on Alexander. In fact, he claims that, after picking up the pipe and putting it in the car, he blacked out and did not wake up until after the boys had picked up Alexander and were on their way to the dump site. He claims that he did not even know Alexander. He also claims that his role in the attack was limited to punching Alexander with his fists.

The government moved to transfer T.J.S.'s case for prosecution as an adult pursuant to the discretionary transfer provision of 18 U.S.C. § 5032.[1] The district court later ordered a

---

[1]18 U.S.C. § 5032 states, in pertinent part as follows: "[W]ith respect to a juvenile fifteen years and older alleged to have committed an act after his fifteenth birthday which if committed by an adult would be a felony that is a crime of violence . . . criminal prosecution on the basis of the alleged act may be begun by motion to transfer of the Attorney General in the appropriate district court of the United States, if such court finds, after hearing, such transfer would be in the interest of justice."

psychological examination of T.J.S. T.J.S. also retained his own expert, who filed a report with the district court. The district court held an evidentiary hearing on the motion to transfer. The court indicated that it had received and would consider the psychological evaluations mentioned above, and testimony was heard from the FBI investigator in charge of the case and some of T.J.S.'s relatives, including his mother, brothers, grandmother, and step-grandfather.

Some days after the hearing, the district court issued its Findings of Fact, Conclusions of Law, and an Order granting the government's motion to transfer. The district court addressed each of six factors which Congress, in 18 U.S.C. § 5032, has directed district courts to consider in "assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems."

In considering T.J.S.'s "social background," the district court found, *inter alia*, that T.J.S. may have been abused by his father as a child, and that his social group and activities reflected a desire to appear "tough." As to "the nature of the offense," the district court found, *inter alia*, that T.J.S. initiated the attack on Alexander, that T.J.S. brought the pipe that was used in the attack, that T.J.S. was carrying a knife when the group went to get Alexander, that the group of boys beat Alexander with a pipe and stabbed him with knives, and that T.J.S.'s description of the attack was detached and that he attempted to minimize his involvement. The district court found that T.J.S. had a "prior delinquency record" consisting of a number of incidents of malicious mischief, disorderly conduct, and attempted car theft. With respect to T.J.S.'s "intellectual development and psychological maturity," the dis-

trict court found that T.J.S. performed well in school when he applied himself, that he had some weak reality perception, and that he presented an above-average risk of violent criminal activity. The district court found that T.J.S. had not been the object of any "past treatment efforts." Finally, the district court found that substantial treatment programs were available, both for juveniles and adults, in the Bureau of Prison's local facilities, but that T.J.S. had expressed no serious interest in any therapeutic programs.

The district court also entered conclusions of law, among which were determinations that the crime charged was a crime of violence and that "[t]he Court *must* assume, for purposes of a transfer determination, that the juvenile committed the offense charged in the Information" (emphasis added) (citing *United States v. Nelson*, 68 F.3d 583, 589 (2d Cir. 1995)).

Based on its findings of fact and law, the district court concluded that prosecution of T.J.S. as an adult was warranted. The district court emphasized the vicious nature of the offense and expressed its belief that T.J.S. had planned the attack in retaliation for Alexander's role in foiling T.J.S.'s attempt to steal a car. T.J.S.'s actions suggested a "significant level of mental development and capacity" and substantial "skills at manipulation which enabled him to lead and persuade others to participate in the crime." The district court recognized that T.J.S. had a difficult childhood and that he had not received prior treatment, but the court stated that "the stark reality remains that T.J.S.'s planning of and participation in a deliberate murder, brutally and callously carried out, make inevitable the conclusion that he is a violent and dangerous person who expresses little or no recognition of or acceptance of responsibility for his actions and from whom society must be protected." The district court found little promise of rehabilitation and concluded on the record as a whole that transfer to adult status was appropriate.

T.J.S. filed a timely notice of appeal.

## II.   *Jurisdiction and Standard of Review*

The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We exercise jurisdiction over this interlocutory appeal in accordance with *United States v. Gerald N.*, 900 F.2d 189, 190-91 (9th Cir. 1990).

The decision to transfer a juvenile to adult status is within the sound discretion of the district court and will not be disturbed absent an abuse of discretion. *United States v. Doe*, 94 F.3d 532, 536 (9th Cir. 1996). The district court abuses its discretion when it fails to make the required findings or when the findings it does make are clearly erroneous.**[2]** *Id.* It also abuses its discretion when it bases its ruling on an erroneous view of the law. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

Questions of statutory and constitutional interpretation are reviewed *de novo*. *See United States v. Juvenile*, 228 F.3d 987, 989 (9th Cir. 2000).

## III.   *Discussion*

## A.   Legal Standards for Transfer

**[1]** The Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. §§ 5031 *et seq.*, permits the criminal prosecution of a juvenile if: 1) it is alleged that the juvenile committed the offense after his fifteenth birthday; 2) the offense would be a felony crime of violence if committed by an adult; and 3) it

---

**[2]**While recognizing the foregoing well-settled standard of review, T.J.S.'s brief urges this court to "go beyond a deferential 'abuse of discretion' standard" and "weigh the prospect of rehabilitation de novo." He suggests that the presumption in favor of retaining juvenile status justifies a less deferential standard of review. However, he cites no case in support of his position, and we are aware of none. We will adhere to this court's established standard of review, as articulated above.

is in the interest of justice to prosecute the juvenile as an adult. 18 U.S.C. § 5032; *see also United States v. Brandon P.,* 387 F.3d 969, 976 (9th Cir. 2004). "The statute clearly intends a presumption of juvenile treatment, and the government bears the burden of establishing that transfer is warranted." *United States v. A.R.*, 38 F.3d 699, 706 (3d Cir. 1994). In considering whether transfer is in the interest of justice, the district court, as noted above, is required to make findings with respect to the six factors enumerated in § 5032. The weight to be given each factor is a matter within the discretion of the district court, and the court is not required to specify whether it regards each factor as weighing for or against transfer. *Brandon P.*, 387 F.3d at 977. Transfer is proper when the risk of harm posed by affording the defendant more lenient treatment within the juvenile justice system outweighs the defendant's chance for rehabilitation. *Doe*, 94 F.3d at 536.

**[2]** Transfer proceedings are not designed to determine whether a juvenile defendant is guilty, but rather are designed to predict the possibility of rehabilitation if in fact the juvenile is found guilty of the crime alleged. *Id.*; *United States v. Alexander*, 695 F.2d 398, 401 (9th Cir. 1982).

## B.  The District Court's Findings of Fact

**[3]** T.J.S. contends that the district court erred in making the following findings: 1) that T.J.S. was carrying a knife; 2) that T.J.S. instigated the attempted theft of a car; 3) that T.J.S. continues to minimize the seriousness of the offense; 4) that T.J.S. has expressed no significant interest in any therapeutic programs; and 5) that T.J.S. planned and led a brutal attack and hence that his danger to society overshadows any minimal chance that he can be rehabilitated. T.J.S. also argues that the district court erred by failing to make the following findings: 1) that T.J.S. had no intent to use the pipe when he found it and placed it in the car; and 2) that there was no evidence that T.J.S. struck Alexander with a pipe, stabbed or cut Alexander, or drove a car over Alexander. We have reviewed

the record, and we find evidence therein to support each affirmative finding of the district court that T.J.S. challenges on appeal. We do not find in the record evidence that suffices to compel the district court to make the findings T.J.S. contends that the district court should have made. We conclude that the district court's factual findings were not clearly erroneous. *Cf. Doe*, 94 F.3d at 536.

## C.   T.J.S.'s Due Process Claim

T.J.S. also contends that the district court violated his right to due process by assuming that he committed the offense. T.J.S. argues that a criminal defendant is entitled to a presumption of innocence at all stages of a criminal case and that the district court's refusal to presume T.J.S.'s innocence for purposes of the transfer motion violated T.J.S.'s right to due process.

**[4]** T.J.S.'s argument runs counter to the great weight of authority. Every circuit that has considered the issue has held that a district court may assume that the juvenile committed the alleged offense for purposes of transfer proceedings. *United States v. Welch,* 15 F.3d 1202, 1208 (1st Cir. 1993) ("[T]he district court . . . may assume, without receiving evidence, that the government's factual allegations relating to the character of the offense are true."); *United States v. Doe*, 871 F.2d 1248, 1250 n.1 (5th Cir. 1989) ("For purposes of a transfer hearing, the district court may assume the truth of the offense as alleged."); *In re Sealed Case*, 893 F.2d 363, 369 (D.C. Cir. 1990) ("While a juvenile can contest evidence offered by the government for five of § 5032's six 'interest of justice' categories, a judge is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing."); *United States v. Juvenile LWO*, 160 F.3d 1179, 1181 n.1 (8th Cir. 1998) ("A district court may assume the truth of the alleged offense at a transfer hearing . . . and we have so stated the facts as alleged."); *United States v. Leon, D.M.*, 132 F.3d 583, 589-90 (10th Cir. 1997) ("[I]n

making the transfer decision, the court may assume the truth of the government's allegations regarding the defendant's commission of the charged crime."); *United States v. A.R.*, 38 F.3d 699, 703 (3d Cir. 1994) ("[T]he district court 'is entitled to assume that the juvenile committed the offense charged for the purpose of the transfer hearing.' "). While this court has, in dicta, spoken approvingly of this practice, we have not had occasion to rule on whether the district court may assume that the accused juvenile is guilty of the offense or offenses set forth in the charging instrument. *See United States v. Miguel*, 338 F.3d 995, 1003 n.23 (9th Cir. 2003) ("The transfer statute suggests that assuming the truth of the allegations is entirely appropriate.").

**[5]** In considering this question we find the views of the D.C. Circuit in *In re Sealed Case* to be especially instructive. In that case, the court, after ruling that "a judge is entitled to assume that the juvenile committed the offense charged," went on to observe that "[s]uch a presumption is not inconsistent with a juvenile's due process rights because the trial itself functions as a corrective for any reliance on inaccurate allegations made at the transfer stage." 893 F.2d at 369. The court noted that, when a juvenile defendant is tried as an adult and found not guilty, the defendant is returned to juvenile status and thus suffers no harm from any erroneous attribution of guilt in the transfer proceedings. *See id.*

**[6]** We agree with the reasoning of *In re Sealed Case*, and we therefore hold that a district court may, consistent with due process, assume a juvenile's guilt of the crime charged for purposes of a § 5032 transfer motion.[3]

---

[3]T.J.S. also makes an argument based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000). T.J.S. contends that the decision to transfer a juvenile to adult status for criminal prosecution requires factual findings and increases the maximum available punishment for the crime within the meaning of *Apprendi*. *See id.* at 490. This argument is foreclosed by our decision in *United States v. Miguel*, 338 F.3d 995 (9th Cir. 2003), in which

**[7]** In so holding, we note two constraints. First, a district court that assumes the guilt of the accused juvenile may not expand that assumption beyond the offense or offenses charged in the information. Second, the authority of a district court to assume the guilt of the accused juvenile is permissive, not mandatory. For example, if the district court has doubts about the defendant's guilt based on the evidence presented pursuant to the motion for transfer, the court may take those doubts into account in ruling on the motion. In the case before us the district court appears to have supposed that it was required to assume the accused's guilt. The court wrote that it "must assume, for purposes of a transfer determination, that the juvenile committed the offense charged in the Information." (Citing *United States v. Nelson*, 68 F.3d at 589).[4]

---

we held that transferring a juvenile to adult status for criminal prosecution does not implicate *Apprendi*. *Id.* at 1004 ( " '[t]he transfer statute does not *per se* increase punishment; it merely establishes a basis for district court jurisdiction.' Thus, we have refused to view the transfer statute as one that increases the potential penalties for a crime.")

[4]*Nelson* was a transfer proceeding in which the Second Circuit was of the view that the district court, in analyzing "the nature of the offense alleged" (the second of the six statutory factors a district court must consider) "undertook an unwarranted examination of the strength of the government's evidence," an "evaluation which served to minimize the seriousness of the offense and its importance in the overall assessment of interest of justice in this case." 68 F.3d at 589. In order to guard against "unwarranted examination [by district courts in transfer proceedings] of the strength of the government's evidence," the Second Circuit, citing *In re Sealed Case, supra,* and *Doe* (5th Cir.)*, supra,* stated: "We think that it is the better practice for the district court simply to assume that, for the purposes of the transfer hearing, the juvenile committed the offense charged in the Information." 68 F. 3d at 589. We surmise that it was this statement by the *Nelson* court that led the district court in the case at bar to conclude that the Second Circuit's rule is that in a transfer proceeding the district court is required to assume the guilt of the accused juvenile. While the Second Circuit's language can be read as directive, we need not attempt to divine its meaning. As stated in the text, above, we follow the D.C. Circuit's view that a district court is free to assume the juvenile's guilt; however, we see no reason to require a district court to do so.

Given that there is language in *Nelson* that can be read as requiring a district court in a transfer proceeding to assume the accused juvenile's guilt,[5] and given the absence of any contrary guidance from this court, we think it entirely understandable that the district court proceeded as it did. But under these circumstances, and bearing in mind that "[t]he statute clearly intends a presumption of juvenile treatment, and the government bears the burden of establishing that transfer is warranted," *A.R.*, 38 F.3d at 706, we hold that remand is in order, so that the district court, advised that it has discretion to assume or to decline to assume the accused juvenile's guilt, will be in a position to exercise that discretion and to reexamine the statutory factors bearing on transfer in the light of the district court's full discretionary authority.

## IV.  *Conclusion*

[8] For the foregoing reasons, the order of the district court transferring juvenile T.J.S. to adult status pursuant to 18 U.S.C. § 5032 is vacated, and this matter is remanded to the District Court for further proceedings in harmony with this opinion.

VACATED AND REMANDED.

---

[5]*See* note 4, *supra.*