**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 08-4062

JUVENILE MALE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(8:05-cr-00401-DKC-1)

Argued: October 27, 2008

Decided: January 23, 2009

Before KING, Circuit Judge, HAMILTON, Senior Circuit
Judge, and Martin K. REIDINGER, United States District
Judge for the Western District of North Carolina,
sitting by designation.

Affirmed in part and dismissed in part by published opinion.
Judge King wrote the opinion, in which Senior Judge Hamilton and Judge Reidinger joined.

## COUNSEL

**ARGUED:** Carmen D. Hernandez, Washington, D.C., for
Appellant. Jonathan C. Su, OFFICE OF THE UNITED

STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF**: Rod J. Rosenstein, United States Attorney, Baltimore, Maryland; James M. Trusty, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

**OPINION**

KING, Circuit Judge:

By way of this interlocutory appeal, CAM, who was seventeen years old when he was charged as a delinquent and arrested in 2005, seeks relief from the district court's transfer order of December 2007, authorizing his prosecution as an adult in the District of Maryland. *See United States v. C.A.M.*, No. 8:05-cr-00401 (D. Md. Dec. 7, 2007) (the "Transfer Order").[1] In his appeal, CAM contends that the charging juvenile delinquency information contravenes the Constitution and is otherwise legally insufficient, that the transfer proceedings violated his procedural rights under the applicable statutes and the Constitution, and that the court abused its discretion in entering the Transfer Order. As explained below, we affirm in part and dismiss in part.

I.

A.

The Transfer Order was entered by the district court pursuant to the Juvenile Justice and Delinquency Prevention Act (the "Act"), specifically that part of the Act codified at 18 U.S.C. § 5032 ("§ 5032"). As we have previously recognized, the primary purpose of the Act is to "'remove juveniles from the ordinary criminal process in order to avoid the stigma of

---

[1]The Transfer Order is found at J.A. 7-11. (Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

a prior criminal conviction and to encourage treatment and rehabilitation.'" *United States v. Robinson*, 404 F.3d 850, 858 (4th Cir. 2005) (quoting *United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990)).[2] The Act establishes several procedures for the handling and disposition of juveniles in the federal system, but does not create a substantive federal juvenile offense. *See United States v. Allen*, 574 F.2d 435, 437 (8th Cir. 1978). Accordingly, a proceeding concerning the potential transfer of a juvenile to adult prosecution in federal court addresses only the juvenile's status; it is not a criminal proceeding and does not result in an adjudication of guilt or innocence. *See United States v. Juvenile Male # 1*, 86 F.3d 1314, 1322-23 (4th Cir. 1996) (recognizing applicability of preponderance burden of proof in transfer hearing).[3] Because such a proceeding is civil in nature, "[t]he procedures used at a hearing on the transfer of a juvenile . . . do not need to conform to all the requirements of a criminal trial." *United States v. Doe*, 871 F.2d 1248, 1255 (5th Cir. 1989). Significantly, the Federal Rules of Evidence do not generally apply in a

---

[2]The Act defines a "juvenile" as a person who has not attained his eighteenth birthday or who committed an alleged offense prior to his eighteenth birthday, and who has not attained his twenty-first birthday prior to the filing of the charging information. *See* 18 U.S.C. § 5031.

[3]In considering the prosecution's burden of proof in a transfer hearing, we recognized in *Juvenile Male # 1* that other courts characterize such proceedings as civil in nature and thus apply the preponderance burden. *See* 86 F.3d at 1322-23 (citing *United States v. A.R.*, 38 F.3d 699, 703 (3d Cir. 1994); *United States v. Parker*, 956 F.2d 169, 171 (8th Cir. 1992)). Although our decision in *Juvenile Male # 1* did not expressly conclude that a transfer hearing is civil in nature, we nevertheless recognized that the government must prove its case for transfer by a preponderance of the evidence. Similarly, in previously recognizing that a juvenile is not entitled to a jury trial in a delinquency adjudication, we explained that "the essential nature of the proceeding was the ascertainment of his status as a juvenile delinquent rather than his conviction as a criminal." *United States v. Hill*, 538 F.2d 1072, 1075 (4th Cir. 1976). As such, we agree with the Third, Sixth, and Eighth Circuits that a transfer hearing is civil in nature. *See United States v. T.F.F.*, 55 F.3d 1118, 1122 (6th Cir. 1995); *A.R.*, 38 F.3d at 703; *Parker*, 956 F.2d at 171.

juvenile transfer proceeding. *See United States v. SLW*, 406 F.3d 991, 995 (8th Cir. 2005) (comparing transfer proceeding to preliminary examination in criminal case, in which evidentiary rules are inapplicable); *In re A.M.*, 34 F.3d 153, 161-62 (3d Cir. 1994) (same); *Doe*, 871 F.2d at 1255 & n.2 (same); *see also* Fed. R. Evid. 1101(d)(3).

The Act establishes several procedural hurdles for the transfer of a juvenile under § 5032. First, the government may initiate a juvenile proceeding only by the filing of a delinquency information, and not by indictment. Second, a United States Attorney must certify one of three potential jurisdictional bases for proceeding in federal court: (1) that no state possesses, or is willing to exercise, jurisdiction over the juvenile; (2) that the state lacks adequate programs and services for the juvenile; or (3) that the juvenile has committed a felonious "crime of violence" or drug offense in which there is a substantial federal interest. *See United States v. White*, 139 F.3d 998, 1000-01 (4th Cir. 1998).

Third, before a district court may exercise jurisdiction in a juvenile proceeding, it must satisfy itself that such jurisdiction has been properly invoked, by "reviewing the stated reasons underlying the government's decision to proceed in federal court." *Juvenile Male # 1*, 86 F.3d at 1321; *see also United States v. T.M.*, 413 F.3d 420, 423-34 (4th Cir. 2005) (recognizing subject matter jurisdiction to review "the government's assertions in its § 5032 certifications"). In assessing a transfer motion, however, a court is not required to examine the veracity of the allegations lodged against the juvenile; it is entitled to accept the prosecution's allegations as true. *See United States v. Juvenile*, 451 F.3d 571, 576 (9th Cir. 2006) (observing that seven courts of appeals — every "circuit to have considered the issue" — have "held that a district court may assume that the juvenile committed the alleged offense for purposes of transfer proceeding").[4]

---

[4]There are limited restrictions on what a district court may assume in addressing a transfer motion. For example, although the court may assume

After confirming its jurisdiction, a district court possesses the discretion to transfer the juvenile to adult prosecution, but must first assess the statutory factors specified in the fifth unnumbered paragraph of § 5032, which are as follows:

> the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems.

In order to grant a transfer request, the court must conclude that a transfer order "would be in the interest of justice by a preponderance of the evidence." *Robinson*, 404 F.3d at 858. As we have explained, "[t]he district court may determine what weight to give the various factors, although, in the weighing of the various factors, the nature of the crime clearly predominates." *Id.* (internal quotation marks omitted). With this procedural background in mind, we turn to the specifics of this appeal.

### B.

### 1.

CAM was arrested in Maryland on August 25, 2005, approximately three months before his eighteenth birthday, on the basis of a juvenile delinquency information filed one day earlier by the United States Attorney (the "Initial Informa-

the truth of the government's allegations, it may not assume the truth of allegations "beyond the offense or offenses charged." *Juvenile*, 451 F.3d at 577. Moreover, if the court harbors doubt, it may factor such doubt into its analysis. *See id.*

tion"). The Initial Information charged CAM with delinquency on the basis of his involvement in a "conspiracy to participate in a racketeering enterprise, which would have been a crime in violation of Title 18, United States Code, Section 1962(d), if he had been an adult." Pursuant to § 5032, the United States Attorney also filed a certification to proceed in federal court, endeavoring to specify the jurisdictional predicate of the proceeding (the "Certification").

CAM provided authorities with two statements that potentially implicate him as being involved in criminal activity. CAM made the first statement during an interview with federal agents on April 7, 2005, months before his arrest. The second statement was provided on the day of his arrest, after CAM had signed a written waiver of his *Miranda* rights. In the August statement, CAM discussed his involvement with a gang known as "MS-13." In addition to providing his statement, CAM assisted authorities in locating a firearm that had been used in a homicide. CAM asserts that the August statement was made during a twelve-hour delay between his arrest and his initial appearance, and that such delay contravened the "forthwith" mandate of the Act. *See* 18 U.S.C. § 5033 ("Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, . . . [he] shall be taken before a magistrate forthwith."). CAM also maintains that the April and August statements were taken in violation of his *Miranda* rights.[5]

On June 14, 2006, after weighing the statutory factors of § 5032, the district court transferred CAM to adult prosecution. *See United States v. C.A.M.*, No. 8:05-cr-00401 (D. Md. June 14, 2006) (the "Initial Transfer").[6] Invoking the

---

[5]In an unresolved motion yet pending in the district court, CAM seeks to suppress his April and August statements, or to have the charging information dismissed (the "Suppression Motion"). The Suppression Motion is found at J.A. 12-15.

[6]The Initial Transfer is found at J.A. 16-37.

collateral-order doctrine, CAM immediately appealed to this Court, and we vacated and remanded. In so doing, we ruled — primarily predicated on a concession of error by the prosecution — that the Initial Information and Certification were defective in failing to comply with § 5032, by insufficiently alleging a "crime of violence." *See United States v. C.A.M.,* 251 F. App'x 194, 195 (4th Cir. 2007). In remanding, we authorized the United States Attorney to "cure the jurisdictional defect by amending either the information or the certification." *Id.*

2.

On November 19, 2007, in an effort to secure another transfer, the United States Attorney filed the amended delinquency information underlying this appeal, specifying, inter alia, that the conspiracy involved violent acts of murder, attempted murder, kidnapping, and robbery (the "Amended Information").[7] In support thereof, the Amended Information incorporated the affidavit of the investigating agent, which had been filed on August 24, 2005 (the "Affidavit").[8] The Affidavit stated, inter alia, that

- CAM was a member of MS-13 in Prince George's County, Maryland, and that the gang had engaged in a pattern of racketeering activities which affected interstate commerce;[9]

- CAM was a passenger in a vehicle when the driver engaged in a drive-by shooting;

---

[7]The Amended Information is found at J.A. 6.

[8]The Affidavit is found at J.A. 41-44. Although the district court had apparently relied on the Affidavit in making the First Transfer, it was not referenced when we vacated that ruling and remanded.

[9]The Affidavit explained that MS-13 is "a Hispanic street gang with more than 8,000 members in 27 states and the District of Columbia. The gang also has more than 20,000 members in foreign countries, particularly El Salvador." Affidavit 1.

- CAM had participated in an attack on a rival gang member, where a victim sustained life-threatening injuries caused by a machete; and

- CAM had participated in "jump ins," where members of MS-13 initiated new gang members by beating them for thirteen seconds.

Two weeks later, on December 6, 2007, the district court issued the Transfer Order now contested on appeal. It therein observed that neither party had requested the presentation of further information on the transfer issue, and it adopted and incorporated the substantive analysis and rulings made in the Initial Transfer. In weighing the statutory factors of § 5032, the court, in the Initial Transfer, concluded that CAM's age and social background, plus the severity of the alleged offense, supported his transfer. The court found that CAM's lack of a criminal record weighed against a transfer, and concluded that three of the factors — CAM's intellectual development and psychological maturity, his past response to treatment efforts, and the availability of rehabilitative programs — were neutral on the transfer issue. Balancing the § 5032 factors, the court concluded that CAM's transfer to adult prosecution was warranted.

CAM again appealed, contending that the Transfer Order is defective in multiple respects. His appellate claims fall into three categories. First, he asserts that the Amended Information is constitutionally and otherwise legally insufficient.[10] Second, he contends that the transfer proceedings violated the procedural protections afforded him by the applicable statutes

---

[10]CAM contends that the RICO conspiracy statute cannot — consistent with the Commerce Clause of the Constitution — criminalize intrastate noneconomic street gangs; that the Amended Information unconstitutionally seeks to criminalize his personal associations, in violation of the First Amendment; and that the Amended Information is otherwise legally deficient because it fails to allege that the RICO conspiracy offense affected interstate commerce.

and the Constitution.[11] Finally, he maintains that the district court abused its discretion in entering the Transfer Order.[12] CAM asserts that we possess jurisdiction of his appeal under the collateral-order doctrine. We first address the jurisdictional question, and identify those claims over which we possess or lack jurisdiction.

## II.

## A.

On the jurisdictional issue, it is elementary that a court of appeals may, as a general proposition, only consider appeals arising from final judgments of the district courts. *See* 28 U.S.C. § 1291. An exception to this "final-judgment rule," however, is the "collateral-order doctrine," which authorizes a court of appeals to review an interlocutory decision when three requirements are satisfied. First, the issue sought to be appealed must conclusively determine the question; second, the question must constitute an important issue independent of the merits of the underlying controversy; and third, the issue must be effectively unreviewable after trial. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468-69 (1978); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949). On the jurisdictional issue, we must consider whether CAM's claims individually satisfy the collateral-order doctrine; a determination that we possess jurisdiction as to certain of his claims does not extend our jurisdiction to others that are out-

---

[11]In his procedural challenges to the transfer proceedings, CAM makes three assertions: (1) the proceedings were defective because the prosecution was barred from amending the Initial Information; (2) the proceedings violated his statutory and constitutional rights; and (3) the Act does not authorize a transfer to adult status on a conspiracy charge.

[12]CAM contends that, in entering the Transfer Order, the district court erred in its findings with regard to the statutory factors specified in the fifth unnumbered paragraph of § 5032. He then contends that the court abused its discretion in its analysis of those factors and in ultimately entering the Transfer Order.

side the narrow ambit of that doctrine. *See Abney v. United States*, 431 U.S. 651, 663 (1977) (recognizing that additional "claims are appealable if, and only if, they too fall within *Cohen*'s collateral-order exception"); *United States v. Blackwell*, 900 F.2d 742, 746 (4th Cir. 1990) (same).

B.

1.

In assessing the jurisdictional underpinning of the issues CAM seeks to pursue, we reach a mixed result. With respect to CAM's procedural and substantive challenges to the Transfer Order, our jurisdiction is controlled by seminal collateral-order doctrine principles and our decision in *United States v. Smith*, 851 F.2d 706 (4th Cir. 1988), which was also a juvenile proceeding. Smith was initially charged as a juvenile, but after he turned eighteen the government dismissed its juvenile charge and indicted him as an adult. *See Smith*, 851 F.2d at 707-08. After the district court denied Smith's motion to dismiss the indictment, he appealed to this court, maintaining that the collateral-order doctrine authorized his appeal. *Id.* at 708. In concluding that we possessed jurisdiction over his appeal, we explained that the court's refusal to dismiss the indictment had "conclusively establishe[d] . . . that [the] defendant may be tried as an adult and not as a juvenile"; that the issue was "separate and distinct" from the issue of guilt; and that declining to hear the appeal would render the issue "effectively unreviewable on appeal from a final judgment." *Id.*

The collateral-order doctrine has been recognized as authorizing interlocutory challenges to juvenile transfer orders and procedural issues that relate directly to such orders. *See United States v. Angelo D.*, 88 F.3d 856, 858 (10th Cir. 1996) ("The justifications for allowing the immediate appeal of transfer orders remain the same regardless of whether the appeal is based on an alleged procedural or substantive defi-

ciency."). It is not surprising, therefore, that "every circuit that has addressed the question ha[s] concluded that an order transferring a juvenile to adult status is immediately appealable under the collateral order doctrine." *United States v. Leon, D.M.*, 132 F.3d 583, 587 (10th Cir. 1997). Importantly, the Act was specifically designed to afford those juveniles charged in federal court with unique procedural protections, such as anonymity. Furthermore, it has been recognized that a juvenile may be irreparably injured if he is improperly transferred to adult status. *See Angelo D.*, 88 F.3d at 858. Pursuant to these authorities, we possess jurisdiction under the collateral-order doctrine to consider CAM's claims of procedural and substantive errors that directly relate to the Transfer Order.[13]

2.

Independent of his contentions on the Transfer Order, CAM also seeks to pursue three challenges to the Amended Information itself. The first two challenges assert that the Amended Information contravenes the Constitution, and the third contends that the Amended Information is otherwise legally insufficient. More specifically, CAM contends (1) that the RICO conspiracy offense alleged in the Amended Information exceeds the bounds of the Commerce Clause, because it is predicated solely on non-economic intrastate activity; (2) that the Amended Information unconstitutionally seeks to criminalize his personal associations, in violation of the First Amendment; and (3) that the Amended Information is other-

---

[13]One of CAM's procedural challenges in this appeal relates to his unresolved Suppression Motion, yet pending in the district court. *See supra* note 5. We possess jurisdiction over a very limited portion of that challenge — that for purposes of the transfer issue, the court erred in considering CAM's two statements to federal agents without first ruling on the Suppression Motion — because that aspect of his appeal raises a procedural claim concerning the transfer proceeding. *See infra* Part III.B.2.b. We do not, however, possess jurisdiction to consider other issues related to the Suppression Motion.

wise legally deficient because it fails to allege that the RICO conspiracy offense substantially affected interstate commerce, and that, absent such an allegation, the statutorily required certification of a substantial federal interest is deficient. These appellate claims present more difficult jurisdictional issues, because they relate to the propriety of the Amended Information itself, rather than the Transfer Order.

CAM seeks to pursue two constitutional challenges to the Amended Information, that is, that it contravenes the Commerce Clause and the First Amendment. Notably, a juvenile delinquency information functions as an indictment. And, like an indictment, the Amended Information must be recognized, "if valid on its face, [as] enough to call for trial of the charges on the merits." *See United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993) (internal quotation marks omitted). Importantly, an order declining to dismiss an indictment is generally not subject to an interlocutory appeal. *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798-802 (1989) ("Only a defect so fundamental that it causes . . . the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried."). In a significant exception, the Supreme Court has recognized that the denial of a motion to dismiss an indictment on double jeopardy grounds is immediately appealable under the collateral-order doctrine, because such a claim embraces the right not to be tried at all. *See Abney*, 431 U.S. at 659; *see also United States v. MacDonald*, 435 U.S. 850, 860-61 (1978). The constitutional protections relied on by CAM, however, fail to include any rights — such as double jeopardy — that would be irreparably lost if appellate review awaits the entry of a final judgment. In these circumstances, we lack jurisdiction to review CAM's constitutional challenges to the Amended Information under the collateral-order doctrine, and must dismiss them.

We reach a different conclusion, however, with regard to CAM's contention that the Amended Information is legally insufficient for failing to allege a substantial federal interest.

This claim challenges the jurisdictional propriety of the certification. Because a proper certification, i.e., that the RICO conspiracy offense affected interstate commerce, is a jurisdictional predicate to a juvenile transfer proceeding, that issue satisfies the requirements of the collateral-order doctrine and can thus be reviewed in this appeal. *See United States v. White*, 139 F.3d 998, 999-1000 (4th Cir. 1998); *United States v. C.A.M.*, 251 F. App'x. 194, 195 (4th Cir. 2007).

III.

We turn now to the merits of the appellate contentions over which we possess jurisdiction: that the Amended Information is legally insufficient for failing to allege a substantial federal interest, that the transfer proceedings violated the procedural protections afforded CAM by the applicable statutes and the Constitution, and that the district court abused its discretion in entering the Transfer Order. As a general proposition, we review for abuse of discretion a district court's decision to transfer a juvenile to adult prosecution. *See United States v. Robinson*, 404 F.3d 850, 858 (4th Cir. 2005). "An abuse of discretion occurs if the district court fails to make the required factual findings, or if those factual findings are clearly erroneous." *Id.* (quoting *United States v. Juvenile Male # 1*, 47 F.3d 68, 71 (2d Cir. 1995) (internal citations and quotation marks omitted)). We review de novo the court's legal rulings, however — both statutory and constitutional — relating to the entry of a transfer order. *See United States v. Soriano-Jarquin*, 492 F.3d 495, 501-02 (4th Cir. 2007); *United States v. Helem*, 186 F.3d 449, 454 (4th Cir. 1999).

A.

First, CAM contends that the Amended Information is legally insufficient in failing to allege a substantial federal interest, i.e., that the RICO conspiracy offense affected interstate commerce. In assessing whether a "substantial federal interest" has been properly certified, a court must decide

whether "the crime [is] of a sufficiently serious type that federal resources should be called upon, without regard to the State's willingness or ability to handle the matter." *United States v. Juvenile Male # 1*, 86 F.3d 1314, 1320 (4th Cir. 1996). Indeed, "[o]ur prior cases . . . have placed importance on the severity of the penalty prescribed for the offense and the sense of urgency by Congress in deciding to federalize the crime." *United States v. T.M.*, 413 F.3d 420, 426 (4th Cir. 2005). In conducting such an assessment, however, we accord substantial deference to the United States Attorney. *See Juvenile Male # 1*, 86 F.3d at 1319.

In this situation, the United States Attorney proceeded under the third prong of the jurisdictional predicate of § 5032, and certified that CAM had committed a "crime of violence." In the earlier Certification, filed in August 2005 in connection with the Initial Transfer, the prosecutor certified that there was a "substantial federal interest" in pursuing the delinquency proceeding against CAM "due to the severe nature of the underlying acts in furtherance of [the] conspiracy and the dangerous nature of the alleged enterprise." The Amended Information plainly alleges that CAM violated the RICO conspiracy statute, and the twenty-year statutory maximum penalty for that offense underscores its severity. *See T.M.*, 413 F.3d at 426. Moreover, the fact that "Congress intended RICO to be a potent tool in halting the infiltration of organized crime into the American economy," *United States v. Baker*, 617 F.2d 1060, 1061 (4th Cir. 1980), demonstrates "the sense of urgency and importance that Congress has placed" on combating criminal organizations, *T.M.*, 413 F.3d at 426-27. In this context, the prosecution's allegations — as reflected in the Amended Information, Certification, and Affidavit — demonstrate a substantial federal interest and thus satisfy the mandate of § 5032. CAM's challenge to the sufficiency of the government's certification of a substantial federal interest thus lacks merit.

## B.

Next, CAM raises three procedural challenges to the transfer proceeding. We address these contentions in turn.

### 1.

In the first of his procedural challenges, CAM asserts that the Act barred the United States Attorney from amending the Initial Information (and thereby satisfying § 5032) after our 2007 remand to the district court. In that appeal, we agreed that the Initial Information was flawed but authorized the prosecution to amend it. This defect was promptly cured on remand by the filing of the Amended Information.[14] CAM contends, however, that the Act accords the United States Attorney with only one opportunity to certify a juvenile for transfer to adult prosecution. If an initial information is legally insufficient, according to CAM, the Act bars any subsequent effort to cure the defect.

On its face, § 5032 does not mandate any specific procedure for the required certification. Indeed, as we explained in the earlier appeal, such a certification may be made in "either the [juvenile] information or the [formal] certification." *United States v. C.A.M.*, 251 F. App'x 194, 195 (4th Cir. 2007). Furthermore, the terms of § 5032 fail to support CAM's position — § 5032 simply requires the certification of a "crime of violence" and a "substantial federal interest." CAM's contention thus borders on the frivolous, and we will "refuse[ ] to allow jurisdiction to be defeated by a . . . ministerial act related to the certification requirement of § 5032."

---

[14]In addition to our mandate in the earlier appeal, Federal Rule of Criminal Procedure 7(e) independently authorizes the amendment of an information by providing that "[u]nless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding."

*United States v. White*, 139 F.3d 998, 1001 (4th Cir. 1998) (internal quotation marks omitted).[15]

2.

Next, CAM contends that the transfer proceedings violated his statutory and constitutional rights. More specifically, he maintains that the transfer proceedings were defective in three ways: (1) that he was denied his Sixth Amendment right to confront witnesses when he was not permitted to question the agent who executed the Affidavit; (2) that the district court erred in considering CAM's two statements of April and August 2005 — allegedly made in contravention of the "forthwith" requirement of § 5033 and his *Miranda* rights — for purposes of the transfer proceeding; and (3) that a psychiatric evaluation conducted at the court's direction and used in the transfer proceedings violated the Fifth Amendment.

a.

First of all, CAM's challenge that he was not allowed to cross-examine the agent is simply misplaced, in that a transfer proceeding is civil in nature. As such, its purpose is not to *incriminate*, but to select the proper forum for trial. *See United States v. A.R.*, 38 F.3d 699, 703-04 (3d Cir. 1994) ("The determination is not one of guilt or innocence, or even of delinquency or non-delinquency, but rather concerns the

---

[15]This matter is strikingly analogous to *White*. There, the United States Attorney initially filed a motion to transfer setting forth the reasons White should be transferred to adult prosecution, along with White's juvenile records. *White*, 139 F.3d at 999. The prosecutor failed, however, to file a separate "need certification," that is, a certification that one of the three § 5032 jurisdictional predicates was present. Instead, the United States Attorney provided the necessary support in his motion to transfer, and filed a formal "need certification" with this Court during the appeal. *See id.* at 1001. "[R]efus[ing] to elevate form over substance," we ruled that § 5032 had been properly invoked because the necessary allegations were provided to the court in the motion to transfer. *Id.* at 1002.

manner in which the state elects to proceed against an alleged malefactor."). As we have observed, a court assessing a transfer issue is entitled to take the prosecution's allegations as true. *See United States v. Juvenile*, 451 F.3d 571, 576 (9th Cir. 2006). In this situation, CAM's inability to challenge those allegations by cross-examining the agent does not contravene the Constitution because "the trial itself functions as a corrective for any reliance on inaccurate allegations made at the transfer stage." *In re Sealed Case*, 893 F.2d 363, 369 (D.C. Cir. 1990).

b.

Next, CAM maintains that the alleged twelve-hour delay between his arrest and arraignment contravened his § 5033 right to be taken "forthwith" before a magistrate. He claims that, if the prosecution had adhered to the forthwith mandate, he would not have made his August 2005 statement or assisted the authorities. In addition, CAM asserts that he did not receive the proper *Miranda* warnings, or waive those rights, in connection with either his April statement or his August statement. Accordingly, CAM contends on appeal that the court erred in considering these statements during the transfer proceeding.

The Act does not specify any remedy for a violation of its provisions. The "forthwith" provision of § 5033 was designed to ensure that juveniles are accorded priority in arraignment proceedings. *See United States v. D.L.*, 453 F.3d 1115, 1124 (9th Cir. 2006). Although a short delay might be expected, an *unreasonable* delay — particularly one designed to obtain evidence — would appear to contravene § 5033. The prosecution bears the burden of demonstrating that it complied with § 5033. *See United States v. Juvenile Male*, 528 F.3d 1146, 1161-62 (9th Cir. 2008).

Importantly, the district court, in making the Transfer Order, relied on CAM's statements only with respect to the

second § 5032 factor, the nature of the offense. The court also relied on the United States Attorney's allegations, which the court was entitled to accept as true, and the other supporting evidence presented to the court. Even without CAM's statements, however, the prosecution's allegations and other evidence warranted the court's finding that the nature of the offense favored CAM's transfer. As a result, even if the court somehow erred in considering these statements, no prejudice could have resulted with respect to its entry of the Transfer Order.[16]

c.

Similarly, the psychiatric evaluation of CAM conducted at the district court's direction and used in connection with the transfer proceeding, did not contravene the Fifth Amendment.[17] Once again, any statement obtained from CAM during the evaluation was not used to incriminate him. As we have observed, the transfer proceedings were civil in nature and CAM's Fifth Amendment rights did not attach in such a setting. *See A.R.*, 38 F.3d at 703-04 ("The failure to administer *Miranda* warnings to A.R. prior to [statements] did not deprive him of his right against self-incrimination, because the use of the [statements] at the transfer hearing did not incriminate him.").[18]

---

[16]To the extent CAM contends that his statements of April and August 2005 were obtained by the authorities in violation of his *Miranda* rights, we lack jurisdiction to assess such a contention, which is yet pending in the district court. *See supra* note 5.

[17]CAM also maintains that the district court lacked the authority to order his psychiatric evaluation. However, 18 U.S.C. § 5037(e) specifically authorizes "observation and study by an appropriate agency" of an "alleged or adjudicated delinquent."

[18]We observe that the eighth unnumbered paragraph of § 5032 provides that statements made "during a transfer hearing," are not to "be admissible at subsequent criminal prosecutions." *See A.R.*, 38 F.3d at 703 & n.5 (citing § 5032 limitation and observing that psychological reports will not "bear on the ultimate substantive question of guilt or innocence" and serve "limited, neutral purpose").

3.

CAM next contends that the Act does not authorize the transfer of a juvenile on the basis of a conspiracy offense. For this contention, he relies on decisions suggesting that the government may not prosecute an adult for a conspiracy offense on the sole basis of his juvenile conduct. *See United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984). The *Spoone* decision fails to support CAM's contention, however, because — unlike Spoone — CAM was first charged as a juvenile. The Act was designed to permit the transfer of juveniles to adult prosecution. Where the § 5032 transfer mechanism has been properly invoked, a juvenile charged with a conspiracy offense may therefore be transferred to adult prosecution. *See United States v. Thomas*, 114 F.3d 228, 263 (D.C. Cir. 1997) ("[T]he [Act] authorizes certain juveniles to be transferred to adult status where they may be tried for conspiracy crimes in adult court.").[19]

C.

Finally, we turn to CAM's contention that the district court abused its discretion in entering the Transfer Order. In that regard, the court concluded, by adopting and incorporating the substantive analysis of the Initial Transfer, that two of the § 5032 factors weighed in favor of CAM's transfer, one weighed against such a transfer, and the other three factors were neutral. As explained below, the court did not abuse its discretion in entering the Transfer Order.

---

[19]It is noteworthy that our sister circuits have consistently upheld the transfer to adult prosecution of juveniles charged with conspiracy offenses. *See, e.g.*, *United States v. SLW*, 406 F.3d 991, 993 n.3 (8th Cir. 2005); *United States v. Ramirez*, 297 F.3d 185, 189 (2d Cir. 2002); *United States v. I.D.P.*, 102 F.3d 507, 508 (11th Cir. 1996).

1.

In analyzing the first factor, the district court concluded that CAM's chronological age "favors transfer," and that his social background "also supports transfer, albeit minimally." Initial Transfer 9-10. A juvenile's age toward the higher end of the spectrum (eighteen), or the lower end (fifteen), is to be weighed either for or against transfer. Here, we agree that CAM's chronological age (seventeen years and nine months) supports his transfer. With respect to CAM's social background, the record is mixed. The district court found that CAM had been raised in "a loving and intact family," and saw nothing in his "social background that would suggest to [him] that gang activity was acceptable behavior." Initial Transfer 11. In contrast to his family situation, however, CAM's life outside the home was not stable. He joined MS-13 around the age of fourteen, and dropped out of school during the ninth grade when his grades and behavior deteriorated. CAM began abusing alcohol at the age of fifteen or sixteen and started using cocaine and marijuana shortly thereafter. Such behavior indicates a lack of structure and support, and accordingly weighs against his transfer. In these circumstances, the district court did not clearly err in concluding that CAM's social background "minimally" favored his transfer to adult prosecution.

After considering the second factor, the court found that the "nature of the alleged offense strongly supports [CAM's] transfer." Initial Transfer 14. CAM allegedly participated in a criminal organization that had been involved in repeated acts of violence. And, in weighing the statutory factors, the nature of the offense is significant. *See Robinson*, 404 F.3d at 859. Accordingly, the court's conclusion that this factor weighed heavily in favor of transfer was not clearly erroneous.

With respect to the third factor, CAM has no prior criminal record. The district court thus concluded that such a clean record weighed against his transfer to adult prosecution. CAM

does not take issue with this conclusion, and the court did not err in this respect.

On the fourth § 5032 factor, the district court found that CAM's intellectual development and psychological maturity constituted a neutral factor. Two psychiatric evaluations show CAM to be in the "low-average range" of intellectual development. CAM's intellectual development at school was hampered by the fact that English is his second language and his parents have limited education. His abuse of drugs demonstrated a low psychological maturity, but such abuse is offset by the responsibility he accepted at home. Although some of CAM's conduct indicated immaturity, the court recognized that he had shown glimpses of maturity. In such circumstances, the court's decision to treat this factor as neutral was not clearly erroneous.

Regarding the fifth factor, the district court concluded that an analysis of past efforts to treat CAM was also neutral. This assessment was predicated primarily on the fact that he had not been enrolled in any formal treatment program. Finally, in disposing of the sixth factor, the court compared the treatment programs at federal juvenile facilities to those maintained by Maryland. It determined this factor to be neutral, because those jurisdictions make similar substance-abuse and gang-counseling programs available. Put simply, the court did not clearly err in determining these final factors to be neutral.

2.

After analyzing these statutory factors, the district court concluded that "the safety of the community requires that CAM be transferred to adult criminal prosecution." Initial Transfer 21. Having separately reviewed the court's findings on the statutory factors for clear error, we examine its ultimate transfer ruling for abuse of discretion. *See Robinson*, 404 F.3d at 858. In so doing, we conclude that the court appropriately evaluated and weighed those factors. As a

result, it did not abuse its discretion in entering the Transfer Order.

## IV.

Pursuant to the foregoing, we affirm the Transfer Order and dismiss the challenges to the Amended Information over which we lack jurisdiction.

*AFFIRMED IN PART AND*
*DISMISSED IN PART*