In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3311

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SEALED DEFENDANT JUVENILE MALE (4),

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-mj-748 — **William T. Lawrence**, *Judge.*

ARGUED MARCH 28, 2017 — DECIDED MAY 2, 2017

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Three juveniles—including M.G.,
who is the defendant-appellant here—and one adult alleged-
ly robbed an Indianapolis CVS pharmacy at gunpoint on Oc-
tober 14, 2015. They were charged with Hobbs Act Robbery,
18 U.S.C. § 1951(a), and possession of a firearm during that

robbery, 18 U.S.C. § 924(c).[1] The government sought to trans-
fer the juveniles' cases for adult prosecution. *See* 18 U.S.C.
§ 5032.

Under 18 U.S.C. § 5032, a juvenile's case can be trans-
ferred for adult prosecution if certain steps are followed. *See*
*United States v. Jarrett*, 133 F.3d 519, 535–36 (7th Cir. 1998).
One of those steps requires the district court to conclude that
the transfer would be "in the interest of justice." 18 U.S.C.
§ 5032. To make that determination, the statute instructs the
court to make findings on the following factors:

1.  the age and social background of the juve-
    nile;
2.  the nature of the alleged offense;
3.  the extent and nature of the juvenile's prior
    delinquency record;
4.  the juvenile's present intellectual develop-
    ment and psychological maturity;
5.  the nature of past treatment efforts and the
    juvenile's response to such efforts;
6.  the availability of programs designed to
    treat the juvenile's behavioral problems.

18 U.S.C. § 5032 (numbering added).

The government moved to have the juveniles examined
by government psychologists to gather information on four
of these factors. The juveniles objected to that motion, argu-
ing that the psychological examinations—which would be
conducted without their counsel present—would violate

---

[1]The adult defendant, Anthony Jackson, was also charged with posses-
sion of a firearm while being a fugitive from justice, 18 U.S.C. § 922(g)(2).

their Fifth and Sixth Amendment rights. The magistrate judge granted the government's motion and ordered the juveniles to submit to psychological examinations, holding that the Fifth and Sixth Amendments do not apply in this context. She further ordered that "[t]he examinations may be conducted without the presence of defense counsel" and that the psychologists conducting the examinations "shall not talk to any of Defendants about the specific allegations contained in the charges against them in this case." (R. 134 at 8.)

The district court agreed with the magistrate judge's decision rejecting the juveniles' arguments. M.G. then filed this interlocutory appeal, again arguing that the psychological examination would violate his constitutional rights. He makes this argument despite the rejection of similar arguments by at least three of our sister circuits. *See United States v. Juvenile Male*, 554 F.3d 456 (4th Cir. 2009); *United States v. Mitchell H.*, 182 F.3d 1034 (9th Cir. 1999); *United States v. A.R.*, 38 F.3d 699 (3d Cir. 1994). We, however, have not yet decided this question. And because we conclude that we don't have jurisdiction to hear this interlocutory appeal, we don't address the merits of this argument today.

In most instances, we have jurisdiction over appeals only from *final* decisions of the district courts. 28 U.S.C. § 1291. "Criminal defendants, like others, must ordinarily wait for a final judgment before they may bring an appeal." *United States v. Sinovel Wind Grp. Co., Ltd.*, 794 F.3d 787, 790 (7th Cir. 2015). A final decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (quoting *Catlin v. United States*, 324 U.S. 229, 233

(1945)). Thus, the "core application" of our jurisdiction under § 1291 is "to rulings that terminate an action." *Id.*

But that is not the full extent of our jurisdiction. There does exist a "small class" of nonfinal orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). These are known as "collateral orders," and they are immediately appealable if three elements are satisfied: the nonfinal order must "(1) be conclusive on the issue presented; (2) resolve an important question separate from the merits of the underlying action; and (3) be 'effectively unreviewable' on an appeal from the final judgment of the underlying action." *Doe v. Vill. Of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)). M.G. argues that the district court's order satisfies all three elements.

Had M.G. waited to appeal until after the district court had issued an order granting the government's motion to transfer under 18 U.S.C. § 5032, then we would be able to consider the merits of his argument now. *See United States v. J.J.K.*, 76 F.3d 870, 871–72 (7th Cir. 1996) (holding that a transfer order issued under 18 U.S.C. § 5032 is an appealable collateral order). But M.G. seeks our review at an earlier stage in the transfer process: he argues that the district court's order requiring him to submit to the government psychologist's examination—which would provide information that the court would *later* use to determine whether to grant the

transfer order—should also be immediately appealable. We disagree.

The collateral-order doctrine is an intentionally narrow exception to the final judgment rule and applies only to a "small category" of decisions. *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995). "The doctrine's modest scope reflects a 'healthy respect' for the virtues of the final-judgment rule." *Abelesz v. OTP Bank*, 692 F.3d 638, 649 (7th Cir. 2012) (quoting *Mohawk Indus.*, 558 U.S. at 106). When deciding whether to extend the doctrine, we view the asserted interest in broad terms: "[t]he justification for immediate appeal … must be based on the entire category of similar cases rather than the potential benefits in the particular case." *Id.*; *see also Mohawk Indus.*, 558 U.S. at 108 ("The crucial question … is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders."). "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, the chance that the litigation at hand might be speeded, or a particular injustice averted, does not provide a basis for jurisdiction under § 1291." *Abelesz*, 692 F.3d at 649 (quoting *Mohawk Indus.*, 558 U.S. at 107).

Arguments to expand the collateral-order exception to a new class of orders typically fail at the third step in our analysis, which asks whether the class of orders would be "effectively unreviewable" at a later stage in the proceedings if we did not permit review immediately. *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1090 (7th Cir. 2014). In this context, "effectively unreviewable" means "something more than that hardship will result from delay

or that the course of litigation will be changed without an appeal." *United States v. Segal*, 432 F.3d 767, 775 (7th Cir. 2005) (quoting *United States v. Michelle's Lounge*, 39 F.3d 684, 693 (7th Cir. 1994), *abrogated on other grounds by Kaley v. United States*, 134 S. Ct. 1090 (2014)). Instead, an order is "effectively unreviewable" only when it involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." *United States v. MacDonald*, 435 U.S. 850, 860 (1978).

M.G. argues that he will be irreparably harmed if we do not review his constitutional claims now. But that is not so. As discussed above, he can raise these same claims on an immediate appeal if the district court grants the government's motion to transfer. In fact, the Third, Fourth, and Ninth Circuits each considered (and uniformly rejected) similar claims *after* the district court granted the government's motion to transfer. *See Juvenile Male*, 554 F.3d 456 (4th Cir.); *Mitchell H.*, 182 F.3d 1034 (9th Cir.); *A.R.*, 38 F.3d 699 (3d Cir.). Although he might not prevail on his claims at that time, it is the later opportunity to present them that matters, not his chances of success. M.G.'s constitutional claims are not rendered effectively unreviewable by our refusal to address them today.

We also note that, if the district court denies the government's motion to transfer, the government still would be prohibited from using at any subsequent criminal prosecution any information obtained from M.G. during the psychological examination. The statute itself prohibits such use. *See* 18 U.S.C. § 5032 ("Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions."). And the

government has conceded as much, promising that "[n]one of the information obtained from the examination of the defendants by [the government psychologists] will be used at any subsequent criminal prosecution following the transfer proceeding in this case or in any other case." (R. 124 at 1.) If the government attempts to renege on that promise, M.G. would have an opportunity to raise his challenge then.

For the foregoing reasons, we DISMISS this appeal without considering the merits.